MURPHY, NEAL & CO. ET AL. V. CREIGHTON.

1. **Jurisdiction**: ADMINISTRATOR: JUDGMENT. The probate court has jurisdiction to appoint an administrator, even in a county where there is no property of deceased beyond an interest in an action at law, and its adjudication is not open to collateral attack.

2. **Practice**: PLEADING. Where a petition is not assailed by motion, demurrer, or in arrest, an objection which might have been made in either of those methods, but was not, will be deemed to have been waived.

3. **Payment**: WHEN MADE VOLUNTARILY: RECOVERY. If a party with full knowledge of all the facts in the case voluntarily pays money in satisfaction or discharge of a demand unjustly made upon him, he cannot afterward allege such payment to have been made by compulsion and recover back the money.

4. **Contract**: AFFREIGHTMENT. A contract between a shipper and a transportation company stipulated that the latter would ship the goods of the former to two points named at the lowest rates; it appeared that to one of the points specified the company had carried the goods of another party at lower rates than those of the party to the contract: *Held*, that this entitled him to recover back from the company the difference only upon the goods shipped to that particular point, and not upon those carried to both the destinations mentioned in the contract.

*Appeal from Pottawattamie District Court.*

TUESDAY, DECEMBER 12.

A written contract is attached to the petition as an exhibit. It is in these words:

" MESSRS. MURPHY, NEAL & CO., Helena. }
MURPHY, HIGGINS & CO., Deer Lodge.     }

" *Gents:* We will transport and deliver all merchandise shipped by you to Montana, at the following rates from St.

Louis: (6) six cents per pound to Helena and Deer Lodge. You hereby agree to ship all freight controlled by you during the season by railroad. For all shipments from other points, deduct 45c. per 100 pounds from through rate and add amounts paid by us to the various roads from shipping point to Omaha, thus making through rate. All goods to be shipped on or before Sept. 15, 1871. It is further agreed, if we carry any freight at lower figures than six cents, your rates will be same as the lowest to points named. Yours truly,

JAS. F. AGLER, *Gen'l Manager.*

" *Accepted:*

MURPHY, NEAL & Co.
MURPHY, HIGGINS & Co."

It is alleged in the petition that the contract was made with plaintiffs by the Far West Freight Company, a partnership of which Edward Creighton was a member, and that said company, under said contract, transported and delivered to plaintiffs, at Helena and Deer Lodge, 921,979 pounds of merchandise, for which plaintiffs paid said company at the rate of six cents per pound, as they supposed they were liable to do under the terms of said contract; that about April 14, 1871, said Far West Freight Company entered into an agreement with one A. G. Lowry to transport to him at Helena, Montana territory, one hundred and fifty tons of merchandise at five dollars and seventy-five cents per hundred pounds, and that said company did so transport said merchandise, which was a lower rate than said company had given plaintiffs. It is claimed that plaintiffs, by the terms of the last clause of their contract, are entitled to recover the difference between six cents per pound, the rate paid said company, and five and three-fourths cents per pound.

There was personal service upon Edward Creighton and he appeared, and on the 22d day of August, 1874, filed his answer denying each and every allegation of the petition. On the 8th day of November, 1874, Edward Creighton died, and on the 10th day of the same month John A. Creighton, appellant, was appointed special or temporary administrator of his estate

by the probate court of Douglas county, Nebraska. On the 16th day of December, 1874, John A. Creighton applied to the Circuit Court of Pottawattamie county, Iowa, for letters of administration, setting forth in his petition that said deceased in his lifetime was defendant in a suit pending in said county, wherein Murphy, Neal & Co. *et al.*, were plaintiffs, and asking that letters of administration be granted to him, to the end that said suit might be brought to a speedy trial and final settlement. This petition also set forth the appointment of petitioner as administrator in the State of Nebraska. On the same day the said Circuit Court appointed said John A. Creighton administrator, in accordance with the prayer of the petition.

On the 20th day of March, 1875, letters of full administration were issued to him by the probate court of Douglas county, Nebraska. On the 26th day of April, 1875, he was substituted as defendant in this cause, and appeared, and the cause was continued by consent.

In November, 1875, appellant filed an amendment to the answer, alleging that at and before the date of his death Edward Creighton was a resident of Nebraska, and that at the date of his death, which occurred in Nebraska, he was not the owner of any property, real or personal, of any kind or description, within the State of Iowa, nor had he any estate of any kind within this State to be administered, and that because of these facts the letters of administration issued by the Circuit Court of Pottawattamie county were void for want of power and jurisdiction in said court to issue the same. The petition and record of the Circuit Court, in the matter of the appointment of the administrator, are exhibited with the answer as part thereof.

To this amendment to the answer there was a demurrer, which was sustained. A jury was waived and there was trial by the court, judgment for plaintiff, and defendant appeals.

*Clinton, Hart & Brewer*, for appellant.

*Sapp & Lyman, M. Key* and *Doniphan & Reed*, for appellees.

ROTHROCK, J.—I. There are a number of causes set out in the demurrer to the amended answer, but we think it must be determined on the question of jurisdiction, and to that clause alone we will direct our attention.

**1. JURISDICTION: administrator: judgment.**

The Code, section 2312, provides that: " The Circuit Court of each county shall have original and exclusive jurisdiction of the probate of wills, and the appointment of such executors, administrators, or trustees, as may be required to carry the same into effect, *of the settlement of the estates of deceased persons*, and of the persons and estates of minors "   *   * .

It is argued that in order to confer jurisdiction upon the court there must be property, or an estate, in the county where administration is granted. This may be conceded, and still we think there was jurisdiction to grant the letters in question. The Code nowhere provides the steps to be pursued to obtain letters of administration, as by petition or otherwise; neither is there any provision as to what evidence shall be adduced to prove that there is property or an estate within the county. What evidence there was before the court in this case on that question we are left to conjecture. Property does not necessarily consist of things tangible. It may have been shown to the court that the interests of this estate demanded that affirmative relief be asked in the action. There was an affirmative claim at least for costs. It is not sufficient that it be shown that the evidence of the existence of an estate in the county did not justify the court in finding that there was an estate. The court had jurisdiction of the subject matter and its adjudication cannot be collaterally attacked.

II. The cause of action, set out in the petition, is to recover back money paid through mistake. The allegation of the petition setting forth the mistake is in these words: " Plaintiffs paid said company at the rate of six cents per pound, as they supposed they were liable to do under the terms of their said contract."

**2. PRACTICE: pleading.**

It is insisted that no recovery can be had upon the allegations of this petition. It is proper to observe that the petition does not charge a fraudulent concealment of the contract

with Lowry. If, then, the plaintiffs can recover at all, it must be by reason of paying the excess under a mistake.

No objection was taken to the petition by motion, demurrer, or in arrest of judgment, and we must hold that such objection was waived. Code, Secs. 2648, 2650.

III. It is claimed that the evidence does not show that the money claimed was paid in mistake of fact. The defect in the petition in not setting out when the payment was made, and that at the time of payment plaintiffs did not know of the contract with Lowry, although waived, does not dispense with proof sufficient to sustain the cause of action founded upon mistake. Counsel for appellee concede the rule to be correct as stated in *Patterson et al v. Cox*, 25 Ind., 261, in a quotation from the opinion in *B. & S. Glass Co. v. City of Boston*, 4 Metcalf, 181, as follows:

3. PAYMENT: when made voluntarily: recovery.

"If a party, with full knowledge of all the facts in the case, voluntarily pays money in satisfaction or discharge of a demand unjustly made upon him, he cannot afterward allege such payment to have been made by compulsion and recover back the money   *   * . In such case, if the party would resist the unjust demand, he must do so upon the threshold. The parties treat with each other on equal terms, and if litigation is intended by the party of whom the money is demanded, it should precede payment."

A careful examination of the evidence in this case discloses an utter failure on the plaintiffs' part to show that the payment in question was made under any mistake whatever. The allegations of the petition are denied, and the burden was on the plaintiffs to prove not only the contract with Lowry, but that when they paid for their shipments they did so without any knowledge of the Lowry contract.

It is claimed that the circumstances attending the shipment of Lowry's goods and other circumstances in the case show that plaintiffs were ignorant of the terms of Lowry's contract. We cannot so regard them. The alleged mistake was a fact to be proved. All these circumstances might well be true, and still the plaintiffs may have known of the Lowry

contract before they paid the money which they now claim to recover.

IV.   It was established on the trial, beyond question, that the Far West Freight Company did ship to Helena, for A. G. Lowry, a large quantity of merchandise for $5.75 per hundred.  By the contract with plaintiffs their rates to Helena and Deer Lodge were to be six dollars per hundred, and the contract contains this provision:

4. CONTRACT:
affreightment.

"It is further agreed that, if we carry any freight at lower figures than six cents, your rates will be the same as the lowest to the points named."

Plaintiffs had merchandise shipped to both Helena and Deer Lodge, and there is no evidence that any shipments were made by the Far West Company to Deer Lodge at any rate less than six cents per pound.  Under these circumstances we think that no recovery can be had for over-payment on the shipments to Deer Lodge.  The fair construction of the contract is that plaintiffs' rates to Helena were to be as low as the lowest to that point, and that their rates to Deer Lodge were to be as low as the lowest to that point.  The language is, "your rates will be the same as the lowest to points named."   But Lowry did not ship to "points named," that is to Helena and Deer Lodge; he only shipped to one of the "points named."  The meaning is that plaintiffs' rates should be the same as the lowest to Deer Lodge, and the same as the lowest to Helena.  As it does not appear that any shipment was made to Deer Lodge for less than six cents per pound, plaintiffs cannot claim that their shipments to that point should be less than the contract price.

We see no other error in the record before us.  The cause will be reversed and remanded for a new trial.

REVERSED.