C. W. ERWIN, Administrator with the Will Annexed of the Estate of Peter Fillenwarth, Deceased, v. JOHN FILLEN-WARTH, Appellant.

**Pleadings:** AMENDMENT. The allowance of an amendment to the petition after the close of the evidence, in which no new and material facts were alleged, but simply changing the demand for judgment upon the transaction originally pleaded, was not prejudicial to defendant; it not appearing that he was deprived of any right to defend, or that he had any additional evidence to offer had an opportunity been afforded.

1

**Probate court:** JURISDICTION: APPOINTMENT OF ADMINISTRATOR: COLLATERAL ATTACK. The probate court is one of general jurisdiction, whose proceedings are presumed to be regular until the contrary is made to appear, and its order admitting a will to probate is effective throughout the state and cannot be collaterally attacked: So that the appointment of an administrator with the will annexed cannot be collaterally attacked, on the ground that the court making the appointment and probating the will did not have jurisdiction because of the nonresidence of the testator.

2

**Evidence:** TRANSACTIONS WITH A DECEDENT:  OBJECTION. An objection to evidence as calling for a personal transaction with a decedent should be directed to the incompetency of the witness under the statute; as the prohibition of the statute relates to the competency of the witness rather than to the character of the evidence.

**Evidence:** MENTAL CAPACITY:  COMPETENCY OF WITNESS. A witness who had known deceased, an aged person with impaired memory, during the last two years of his life, had conversed with him frequently and noticed that he had a habit of picking up trivial and worthless things, was competent to express an opinion as to his mental condition; and the fact that such witnesses were incompetent to testify to personal transactions with decedent would not disqualify them from testifying as non-experts to his mental condition.

**Same.** A non-expert witness, who has established his competency by detailing the facts, may state whether a person whose mental competency was the subject of inquiry was capable of looking after his own financial affairs, without violating the rule that such a witness cannot express an opinion on the ultimate fact to be found by the jury.

**Same:** COMPETENCY OF WITNESS:  PERSONAL INTEREST. A legatee having but a nominal interest in the estate is not thereby rendered incompetent to testify to a conversation with deceased, as a witness for the administrator, the estate being ample to discharge all legacies, although the action result adversely to the administrator.

**Estates of decedents:** RECOVERY OF ASSETS:  EVIDENCE. An affidavit filed in tax proceedings, alleging an indebtedness to a decedent as an offset against moneys and credits owned by affiant, is admissible in an action by the administrator of decedent against the affiant to recover property of the estate alleged to have been appropriated by him, but claimed by him as a gift from decedent.

**Instructions:** WHEN MUST BE IN WRITING. The statutes requiring that instructions to the jury shall be in writing contemplate only statements by the court of principles of law applicable to the case, which the jury must apply to reach a verdict; general direction to the jury concerning their duty, and having no bearing upon the evidence they are to consider in connection with the law applicable thereto, are not instructions which must be in writing. Thus where the jury made an evident mistake in answering certain interrogatories the court properly directed their attention to the mistake, and to the original instructions on the subject, without submitting the same in writing.

*Appeal from Hancock District Court.*—HON. C. H. KELLEY,
Judge.

FRIDAY, SEPTEMBER 27, 1912.

ACTION by the administrator of the estate of Peter
Fillenwarth to recover certain property of decedent, alleged
to have been appropriated by defendant, and also the amount
owing on certain notes, alleged to have been executed by
the latter to decedent. Judgment was entered as prayed,
from which defendant appeals.—*Affirmed.*

*J. E. Wichman,* for appellant.

*Senneff & Bliss,* for appellee.

LADD, J.—Peter Fillenwarth died, testate, April 10, 1908.
His will, which was duly admitted to probate, bequeathed
$5 each to his sons, Frank and John, and his daughter, Caro-
line, and directed that a fourth of the residue be given to each
of the above-named children, and the remaining fourth to
Floyd and Leland, sons of Peter Fillenwarth, Jr. He had
distributed to these and others of his children nearly $40,000
prior to his death, and some securities reached the hands of
the administrator with the will annexed, who brought this
suit against John Fillenwarth, a son of deceased, alleging in
counts 1 and 2 of the petition that defendant, subsequently
to decedent's death, converted to his own use two certificates
of deposit, issued by the First National Bank of Britt, of $500
each; in count 3, that he had appropriated to his own use
$760 in cash; in count 4, that about March 2, 1908, defendant
received the cash on six certificates of deposit, issued by the
same bank, of $500 each to decedent, amounting to $3,150,
and, on pretense of borrowing same, gave decedent his notes
of $1,500 and $1,650, respectively; and that deceased at such
time, and when other transactions occurred, was laboring

under mental disability and unable to transact business. The answer, in addition to denying everything, alleged that the two certificates of deposit first mentioned had been turned over to him as a gift by deceased, he indorsing the same to defendant; that the $760 had been given defendant's wife, with directions to pay his funeral expenses out of the same, and to keep what was left in consideration of the care she had given him; that decedent owned but three of the certificates mentioned in count 4, two of which were given by him to defendant and the other collected by decedent. These averments of the answer were put in issue by the reply.

I. After all the evidence had been adduced and the cause was being argued to the jury, the plaintiff filed an amendment to the petition as count 5, alleging that the notes

1. PLEADINGS: amendment. referred to in count 4 were past due, that payment had been refused, and praying judgment as in the petition. A motion to strike this amendment as being an additional count against which defendant had not been afforded an opportunity to defend, and as filed too late, was overruled.   -

No new facts were alleged, save in describing the notes and saying that payment had been refused. The transaction relied on was that specified in count 4; and the only material change wrought by adding count 5 was in demanding judgment on the notes, instead of for the proceeds of the certificates of deposit, said to have been collected. How, then was the defendant prejudiced? He lost no opportunity to defend; nor is it pretended that evidence existed which might have been adduced, had opportunity been afforded. There was no error in overruling the motion to strike. *Jarozewski v. Allen,* 117 Iowa, 632; *Taylor v. Star Coal Co.,* 110 Iowa, 40; *Taylor v. Taylor,* 110 Iowa, 207; *Bruner v. Brotherhood of American Yeomen,* 136 Iowa, 612. The facts suggested readily distinguish the case from *Boardman v. Construction Co.,* 123 Iowa, 603; *Building & Loan Ass'n v. Burgess,* 129 Iowa, 422, and others cited by appellant.

II.   On the second day of the trial, an amendment to the answer was filed.   Therein defendant averred that Peter Fillenwarth was not a resident of Clayton county, Iowa, at the time of his death, but was a resident of Hancock county, and that for this reason the district court of Clayton county was without jurisdiction to admit his will to probate or appoint an administrator of his estate; and therefore plaintiff was not the due and legally appointed administrator of the estate of deceased.   A motion to strike, on the grounds (1) that plaintiff's appointment as administrator might not be attacked collaterally, and (2) that the pleading presented no issue triable elsewhere than in the district court of Clayton county, was sustained, and of this ruling complaint is made.   The will of decedent had been admitted to probate in Clayton county; and the application for the appointment of plaintiff as administrator with the will annexed merely recited that the applicants were legatees, that the executor named in the will had refused to serve, and prayed for such appointment.   In such a contingency, the statute directs that another be designated by the court admitting the will to probate.   Sections 3278, 3290, and 3291. This is precisely what was done, and the appointment necessarily is valid, unless the court was without jurisdiction to admit the will to probate.

2. PROBATE COURTS: jurisdiction: appointment of administrator: collateral attacks.

Section 225 of the Code declares that "the district court shall have original and exclusive jurisdiction to probate the wills, of and to grant administration upon the estate of, all persons who, at the time of their death, were residents of the county, and of nonresidents of the state who die leaving property within the county subject to administration, or whose property is afterwards brought into the county."   Its jurisdiction in the settlement of the estate is co-extensive with the state (section 3265, Code); and, even though decedent's place of residence be a jurisdictional fact, it is one of those jurisdictional facts, as apparent from the language of the above statute, which must be determined by the court from the

evidence produced, before admitting the will to probate, the determination of which is valid until set aside in some proper manner, as on appeal, citation, or the like. *In re Estate of Howard*, 22 Cal. 395. In other words, the probate court in this state is a court of general jurisdiction, and its proceedings are presumed to be regular until it is shown that they are not. *Reed v. Lane*, 96 Iowa, 454; *Tucker v. Stewart*, 121 Iowa, 714.

The order admitting a will to probate is effective throughout the state, and may not be collaterally attacked. *Townsend v. Townsend*, 4 Cold. (Tenn.) 70 (94 Am. Dec. 185); *Tanner v. Allison*, 3 Dana (Ky.) 423; *Halbert v. De. Bode* (Tex. Civ. App.) 28 S. W. 58.

As the probate of the will might not be assailed collaterally, and nothing in the amendment filed indicated that the plaintiff had been appointed otherwise than in pursuance of statutory direction, there was no error in sustaining the motion to strike such amendment. See, generally, as to appointment of administrators being subject to collateral attack. *Murphy v. Creighton*, 45 Iowa, 179; *McFarland v. Stewart*, 109 Iowa, 561; *Nash v. Sawyer*, 114 Iowa, 742; *Seery v. Murray*, 107 Iowa, 384; *Lees v. Whetmore*, 58 Iowa, 171. These cases are distinguishable from *In re Estate of King*, 105 Iowa, 320, where the petition for appointment of the administrator disclosed .on its face that the court to which addressed was without jurisdiction.

III.  Frank Fillenwarth testified that defendant had said to him, about March 2, 1908, that he had taken money of his father's out of the bank and owed him $3,000, with interest, or $3,150 altogether, and that about two weeks later, while with his father (decedent), he observed some notes in a tin box on the table at which they were sitting, and which decedent had been looking over; that he took out the notes and read them; and that one was for $1,650, payable in six months, and the other for $1,500 payable in one year, both dated March 2, 1908, and bearing interest at the rate of 5 per cent. per annum. The interrogatories eliciting

3.  EVIDENCE: transactions with a decedent: objection.

this testimony were objected to "as calling for a personal transaction with the deceased, and objectionable until it, has been shown, at least, that it is not a personal transaction with the deceased," and a motion to strike an answer "as showing a personal transaction with deceased" was overruled. These objections might well have been more definite in directing attention to the incompetency of the witness, under section 4604 of the Code, to testify. That an inquiry will elicit personal transactions and communications is not a ground for objection. That may be the very evidence desirable, besides the best and most pertinent to the issue. Such evidence is not prohibited, but only certain witnesses from giving it. *Campbell v. Collins*, 133 Iowa, 152; *Burdick v. Raymond*, 107 Iowa, 228; *Greenlee v. Mosnat*, 136 Iowa, 639. The objection should be made to the witness, not necessarily when sworn, but upon being interrogated concerning matters of which the statute has declared him incompetent to speak. *Chew v. Holt*, 111 Iowa, 362; *Davis v. Hall*, 128 Iowa, 647. Possibly, in view of what had preceded, the objection might have been treated as sufficient by the court; but it will be noted that nothing the witness testified to was a communication or transaction with decedent. The box was on the table, and was not shown to have been in decedent's possession when he took it; nor does it appear that the witness examined the contents by permission, or that decedent handed the box to. him for that purpose. He appears to have examined the contents on his own motion, and the court rightly ruled that the testimony did not disclose a personal transaction or communication.

IV. Certain nonexperts, after detailing facts within their knowledge or observation, were allowed, over objection, to express their opinion as to whether decedent was of sound mind. The rulings as to all, save the witness Black, are not fairly debatable, and nothing need be added to what will be found in previous decisions. Black had known the deceased the last two years of his life, and had seen him two

4. EVIDENCE: mental capacity: competency of witness.

or three times a week during the last year, had talked with him on the street and visited with him sometimes in defendant's yard, and had noticed nothing peculiar about him, "only that he was kind of picking up string and things; . . . sometimes thought he was losing his memory." On this recital of facts, the witness was allowed to say he did not regard decedent's mind sound during the last year. The court might well have required the facts to have been elicited more fully, as had been done with other witnesses; but we are not ready to say that the continual search for and accumulation of strings and other similar objects by a person advanced in years to more than eighty and of impaired memory is not an indication of mental unsoundness, and that a witness, after reciting such facts in connection with a somewhat intimate acquaintance, may not express an opinion thereon. There was no error. *Stutsman v. Sharpless,* 125 Iowa, 335; *Hull v. Hull,* 117 Iowa, 738; *Spiers v. Hendershott,* 142 Iowa, 446.

The circumstance that some of the witnesses were incompetent to testify to personal transactions or communications with decedent furnished no ground for excluding their opinion, as nonexperts, as to his mental condition. *In re estate of Goldthorp,* 94 Iowa, 336.

Frank Fillenwarth, after detailing facts, was asked whether "Peter Fillenwarth was capable of looking after financial affairs," and, over objection as incompetent, answered in the negative. This ruling is said to have been erroneous, in that it allowed the witness to pass on the merits of the case precisely as the jury must have done. As upholding the ruling, see *State v. McGruder,* 125 Iowa, 741; *Glass v. Glass,* 127 Iowa, 646; *Searels v. Insurance Co.,* 148 Iowa, 65; *In re Will of Overpeck,* 144 Iowa, 401.

5. SAME.

Nothing need be added to what has been said in these decisions. Of course, a nonexpert may not be permitted to express an opinion on the ultimate fact to be found by the

jury, and *In re Betts' Estate,* 113 Iowa, 111, was cited as so holding in *State v. Bennett,* 143 Iowa, 214, and *Martin v. Des Moines Edison Light Co.,* 131 Iowa, 724, but not as approving the particular application of the rule in that case, which, together with that in *Pelamourges v. Clark,* 9 Iowa, 1, had been repudiated in the above-cited authorities. The ruling has our approval. It is said that the opinions of the nonexperts were not limited to the period of their observation of and acquaintance with decedent. The record is otherwise.

V. George Fillenwarth was permitted to testify to a conversation with decedent, over objection to his competency as interested in the result of the suit. As seen, all he was given by the will was $5; and it was made to appear that all debts of the estate had been paid and $2,500 remained in the hands of the administrator, though the heirs and legatees had agreed that $1,000 of this should be distributed as belonging to the estate of the decedent's wife, who departed life several years previous to his death. The court held that, as the bequest to the witness was little more than nominal, the showing was sufficient to indicate that he was without interest in the outcome of the suit, and therefore was competent to testify. Beyond all reasonable probability, the estate would have been sufficient to discharge all legacies, had this cause resulted adversely to the administrator; and the court did not err in so deciding and therein ruling the witness competent. See *Bird v. Jacobus,* 113 Iowa, 194; *German American Sav. Bank v. Hanna,* 124 Iowa, 374.

6. SAME: competency of witness: personal interest.

VI. Exception is taken to the ruling by which defendant's affidavit, filed with the county treasurer for the purpose of showing debts owing by him to offset moneys and credits by him owned, in an investigation by tax ferrets, was received in evidence over objection. This affidavit asserted that he was indebted to decedent in the sum of $2,000 in 1905, and during the three years following $3,660. Appellant contends

7. ESTATES OF DECEDENTS: recovery of assets: evidence.

this was explained, so as to conclusively rebut any inference of an existing indebtedness. The explanation was that when his father gave him $2,000 many years previous he had undertaken to pay 5 per cent. per annum thereon during his parents' lives, and upon receiving $1,500 more he promised to pay 4 per cent. per annum thereon while his father lived; and that in making the affidavit he had added a year's interest to each of these sums to make up that stated in the affidavit. But the undertaking to pay interest on the $2,000 had been canceled immediately after his mother's death in November, 1903, and his only obligation arising out of the last transaction was to pay his father the 4 per cent. per annum on the $1,500, or $60 yearly during his life. The affidavit then was intentionally false, or else may have referred to other indebtedness of defendant to decedent, and, in view of the method of transacting business with or for decedent, may have had reference to matters involved in this litigation. The defendant, though under sixty years of age, seems to have been afflicted with a poor memory concerning matters against his interest, though in the face of conclusive proof he was able greatly to refresh it since appearing before a referee in an examination to ascertain the assets of the estate, and, though recalling in his testimony on the trial certificates of deposit he had before forgotten, this recollection was accompanied with the memory that these were given to him or his wife. The court did not err in giving wide range to the inquiry of witness' relation to dealings with decedent and what he had said concerning these.

VII. The fourth instruction reads: ''If you find, from the weight or preponderance of the evidence introduced upon the trial that any or all of the property mentioned in plaintiff's petition, as set out in paragraph 1 hereof, came into defendant's possession, and that defendant retained and still retains same as his own, then plaintiff is entitled to recover the amount so retained by defendant, together with interest thereon, unless you find, from the weight or preponderance

of the evidence introduced upon the trial, that said Peter Fillenwarth made a valid donation or gift thereof to defendant, substantially as claimed by defendant.''

The criticism of this instruction is that it authorized a recovery by plaintiff on all six of the certificates of deposit of $500 each, alleged in the fourth count to have been cashed by him, notwithstanding the fact that three of these had not been shown ever to have been in the name of the decedent. If this be conceded, however, a sufficient response is that the answers to the interrogatories affirmatively disclose that nothing was allowed by the jury on the fourth count of the petition. This is made apparent in what follows.

VIII. Some time after the cause had been submitted, the jury returned into court with a verdict for plaintiff in the sum of $5,162.24 and answers to the special inter-

8. INSTRUC-
TIONS: when
must be in
writing.

rogatories, saying that they had allowed recovery of $1,648.11 on the first three counts of the petition, and as follows to the fourth and fifth: ''Int. 4. What amount, if any, do you allow plaintiff upon count 5 of his petition? Ans. Int. 5. What amount, if any, do you allow plaintiff upon count 4 of his petition? Ans. $3,514.13. J. A. Kramer, Foreman.''

The court after inspecting the verdict, said:

Gentlemen: You have made a mistake in answering these interrogatories. I will read to you the instruction, or a portion of the fourteenth instruction, applying to this. [Done.] You seem to have answered the interrogatories correctly as to the first, second, and third counts, and I will read the instructions in reference to the fourth and fifth. [Done.] You have not followed these instructions, gentlemen, and you can retire to your jury room and straighten them out as between the fourth and fifth counts.

The jury retired, and, after remaining out twenty-five minutes, returned, when the court inquired.

Do you want to ask me some question? Foreman: We can't understand that count 4 and 5. By the Court: Well,

count 4, as I say to you in the instructions, is based upon a claim in reference to certificates of deposit. Now, in that instruction I say to you that you can only allow on count 4 the $1,575, with interest; and, if you find for plaintiff on count 4, that is the greatest amount that you can allow. If you find for plaintiff upon count 5, as I say to you in the instructions here, that is based upon two alleged promissory notes. Now, under count 5, if you find for plaintiff, you can allow the amount of the notes, with interest. In the event that you allow plaintiff anything on count 5, you must not allow anything on count 4. Do I make it plain? Juror Rhodes: As I understand it, your honor, we have not allowed anything on count 4. By the Court: I think, Mr. Rhodes, you have allowed on count 4, as you will find by reading the interrogatory. That is the one you have allowed on, instead of count 5. By reading the interrogatory itself, you will see that you have allowed on count 4, and not on count 5. If your intention was to allow on count 5 and not on count 4, you may retire and attend to it.

The defendant duly excepted, and the jury in a short time returned with the same verdict, but with the answer to interrogatory 5 erased, and it inserted as the answer to interrogatory 4. The defendant excepted to all that occurred, and now insists that what the court said amounted to an oral instruction, and was in violation of section 3705 of the Code, exacting that the charge of the court be in writing, and section 3720, requiring that when the jury are returned into court and additional instruction as to any point of law arising in the case given these "shall be in writing" and subject to same exceptions as those previously given. Were what was said by the court to be regarded as an instruction in the sense contemplated by statute, the exceptions of defendant must have been sustained. *Head v. Langworthy*, 15 Iowa, 235; *State v. Harding*, 81 Iowa, 599; *State v. Mullen*, 151 Iowa, 392.

But the language cannot be so construed. Therein no principle of law was explained or applied, nor any phase of law or fact arising in the case discussed. All that was

done was to direct the attention of the jury to an evident mistake in answering the interrogatories, and to clearly point out precisely the mistake made. This is the more apparent when what the court said is read in connection with that portion of the fourteenth instruction by him referred to, which reads:

In reference to the claim made by plaintiff in the fifth count of his petition, as set out in paragraph 1 hereof, if you find from the weight or preponderance of the evidence introduced upon the trial that on March 2, 1908, defendant borrowed of said Peter Fillenwarth $3,150, and that he executed his notes therefor substantially as alleged in said count, then you should allow plaintiff such amount, together with interest thereon at the rate of 5 per cent. per annum from March 2, 1908, to the date of the maturity of said notes and 6 per cent. thereafter. If you find for plaintiff upon count 5 of his petition, you should not allow plaintiff any sum upon the fourth count of his petition, as set out in paragraph 1 hereof, as the matter of the certificates mentioned in said count 4 is, according to plaintiff's theory, included in the notes mentioned in said count 5. If you fail to find for plaintiff upon said count 5, you may consider said count 4. In reference to the six $500 certificates of deposit therein referred to, there is no evidence which in any way connects the decedent, Peter Fillenwarth, with three of said certificates, it appearing conclusively that said three certificates stood in the name of defendant's wife, and in no event should you allow plaintiff anything because thereof. As to the other three certificates, the evidence shows that they were turned over to and cashed by the defendant. If you fail to find that two of said certificates were given to defendant, substantially as claimed by him, then you should not allow plaintiff anything because thereof. If you find that the proceeds of the other $500 certificate and the interest upon the three certificates were paid to said Peter Fillenwarth by defendant, substantially as claimed by defendant, then you should not allow plaintiff anything because thereof. In no event should you allow plaintiff on count 4 any sum in excess of $1,575, together with 6 per cent. interest thereon from March 2, 1908.

The court merely pointed out the direction given in this instruction and indicated the manner of answering the special interrogatory. The verdict was not changed. This was not an instruction, within the meaning of the statutes cited. As observed in *Burton v. Neill*, 140 Iowa, 141, "the instructions, which must be in writing under statutory requirements, are only expressions of the principles of the law applicable to the case, or some branch or phase of the case, which the jury are bound to apply in order to render a verdict establishing the rights of the parties, in accordance with the facts proven. . . . General directions to the jurors as to their duty, not having any bearing upon the evidence which they are to consider and the law applicable thereto, are not instructions such as required to be in writing." The decisions cited therein fully sustain the rule as stated. There was no error.

Appellant urges that the evidence was insufficient to carry the issue as to decedent's mental unsoundness to the jury, and insists that the verdict is not sustained by the evidence. A careful reading of the record has convinced us otherwise, and that the judgment should be *Affirmed*.