BURNET FERGUSON, Administrator, Appellee, v. ROY L. CONNELL et al., Appellants.

No. 40100.

MAY 16, 1930.

*John P. Hampton* and *Wilson, Brown & Wilson,* for appellants.

*L. E. Thompson* and *Ferguson & Ferguson,* for appellee.

KINDIG, J.—Floyd E. Jackson, who was an American soldier in the late war with Germany, died during July, 1918, in the service of his country, at Chateau Thierry, in France. At the time of his death, he carried a war risk insurance policy for $10,000, payable in annual installments to Albert Jackson so long as the latter lived. This beneficiary, Albert Jackson, died in St. Joseph, Missouri, during July, 1925. Said annual installments above-mentioned were received by the beneficiary to the extent that, when he died, there remained due under the policy only $7,243. The concession is made, for the purposes of this case, that, under the Federal law, the balance aforesaid became payable to the estate of the insured, Floyd E. Jackson. So, on September 30, 1925, an application for the appointment of an administrator of the Floyd E. Jackson estate was made in Linn County by the defendant-appellant Roy L. Connell. That appellant was the uncle of Floyd E. Jackson. On October 2, 1925, the Linn County district court appointed the applicant, Roy L. Connell, as administrator of said estate, and fixed the administrator's bond at $10,000. Complying with the court's order, the administrator, on October 3, 1925, furnished the bond, upon which the defendant-appellant National Surety Company of New York City was surety. Thereafter, the insurance money was collected, distribution thereof made, and the administration in all respects proceeded in the regular way until May 5, 1927, when the estate was finally closed, the administrator discharged, and the surety on his bond exonerated.

Listed as the heirs of Floyd E. Jackson in the Linn County probate proceedings were the appellant Roy L. Connell, of Cedar Rapids, the defendant-appellant Eugene Connell, of Clarinda, both uncles, and Maude Hayes, of Excelsior Springs, Missouri, and Bessie Walker, of St. Joseph, Missouri, both aunts. These

aunts and uncles were the sisters and brothers, respectively, of Nora Jackson (née Nora Connell), who was the mother of Floyd E. Jackson, deceased. It is claimed by appellants that Floyd E. Jackson was the illegitimate son of Nora Connell, and that Albert Jackson, the beneficiary aforesaid, was not his natural father, but a stepfather. Nora Connell and the beneficiary, Albert Jackson, married about two years after the birth of the insured, Floyd E. Jackson. Contention is made by the plaintiff-appellee that Albert Jackson, after his marriage to Nora Connell, the mother of Floyd, so recognized the child as his own as to establish the relationship of father and son. Nora Connell Jackson died in the year 1900.

Appellee was appointed administrator of the Floyd E. Jackson estate in Page County on May 3, 1927. Application for said appointment was made by the alleged heirs of the beneficiary, Albert Jackson, their claim being that they were entitled to receive the proceeds of said insurance through the alleged father, Albert Jackson. Before the administration was completed in the Linn County district court, Fredericka Stiverson appeared therein, and set up a claim to the insurance money for herself and others similarly situated. Fredericka Stiverson and the others for whom she appeared in the Linn County court are the alleged heirs of Floyd E. Jackson, who, according to the administrator in Page County, are entitled to the insurance money. Dismissal of the claim in the Linn County proceedings was made by Fredericka Stiverson for herself and the others she represented, and the claimant withdrew from that proceeding. Subsequently, on May 6th, the present suit was commenced, for the purpose, as before stated, of recovering from the appellants the $7,243 war insurance money previously described. To put the thought in another way, the appellee, as administrator, desires to obtain possession of the funds aforesaid in order that they may be delivered to the heirs, not of the mother, Nora Connell, but of the purported father, Albert Jackson.

Because of the jurisdictional question involved, we do not decide or suggest who are the heirs of Floyd E. Jackson, or in what proportion they inherit. Many matters are extensively briefed and argued by the parties, but, for the purposes of this appeal, the material issues, we find, are confined to the following propositions: First, that the Linn County district court

did not have jurisdiction to appoint the administrator and conduct the administration, for the reason that Floyd E. Jackson, at the time of his death, so it is alleged, was a resident, not of Linn County, but of Page County; and, second, the appellant Roy L. Connell, through fraud, induced the Linn County district court to accept jurisdiction of the subject-matter.

For answer to the first proposition aforesaid, the appellants maintain that the Linn County district court, so far as the probate record shows, did have jurisdiction, and therefore the same cannot be collaterally attacked. Any attack which may be made upon the jurisdiction in the premises, appellants argue, must be direct, as distinguished from collateral. By way of answer to the second contention made by appellee concerning the fraud, appellants argue that the evidence does not sustain the allegation. Such, in a general way, is a statement of the problem presented.

I. Assuming there was no fraud in the institution of the proceedings, did the Linn County district court have jurisdiction so far as a collateral attack is concerned? This is the first question. The Code of 1924 contains the following provisions:

"Section 10763. The district court of each county shall have original and exclusive jurisdiction:

"1. * * * to grant administration upon the estates of, all persons who at the time of their death were residents of the county, and of nonresidents of the state who die leaving property within the county subject to administration, or whose property is afterwards brought into the county. * * *"

"Section 11825. The court of the county in which * * * administration [of a decedent's estate] * * * is granted, shall have jurisdiction coextensive with the state in the settlement of the estate and the sale and distribution thereof."

In 1920, this court, after reviewing many cases, finally concluded that the judgment of the district court first assuming jurisdiction over probate proceedings could not be collaterally attacked unless the records thereof disclosed no jurisdiction. *In re Estate of Kladivo,* 188 Iowa 471. During the discussion in the *Kladivo* case, we said:

"The doctrine that administration [of an estate] granted in a county other than that of decedent's residence at the time

of his death is voidable, rather than void, tends for conservatism, and will avoid largely the evil consequences which might follow in the wake of a different conclusion. Where the question, as in this case, is one of doubt as to the county to which administration belongs, there might be two administrations, debtors might be subjected to verdicts by different juries, and possibly two judgments for the same debt, but by different courts. Confusion might result as to the title of property, both real and personal. We are contented with the doctrine which has prevailed in this state for more than 40 years, and have no hesitancy in deciding that administration granted by the district court of Linn County [in the *Kladivo* case] may be assailed only by direct attack, and, until thus assailed and set aside, there can be no administration of the estate in any other county. In other words, there can be but one grant of administration on the same estate, and jurisdiction, having once attached, will continue until set aside on direct attack by someone interested in the estate.''

Of course, if the judgment record discloses that the district court did not have jurisdiction, then the judgment may be collaterally attacked. *In re Estate of King,* 105 Iowa 320. But if the application for the appointment of the administrator or the judgment record sets forth jurisdictional facts, an attack on the judgment cannot be made collaterally; for, when the court recites facts, the record is a verity, so far as a collateral attack is concerned. *In re Estate of Kladivo* (188 Iowa 471), supra; *Lees v. Wetmore,* 58 Iowa 170 (local citation 177) ; *Erwin v. Fillenwarth,* 160 Iowa 210 (local citations 214, 215) ; *Murphy, Neal & Co. v. Creighton,* 45 Iowa 179 (local citation 182). If an interested party, in the face of such facts recited, desires relief, and finds it necessary to controvert the record, the attack may be direct. See *In re Estate of Rowe,* 179 Iowa 541.

Appellee contends, however, that the present case is distinguishable from the *Kladivo* and other cases for the reason that here the record does not reveal jurisdictional facts. As a matter of fact, neither the petition for the appointment of administrator nor the court's findings expressly in words affirm that Floyd E. Jackson was a resident of Linn County when he died. Within the petition it is alleged that he was a resident of Iowa, but the county wherein he lived is not therein named. It is claimed by appellee that, the record being silent concern-

ing the jurisdictional facts, the judgment can be attacked collaterally. Appellee declares that his assertion in that regard has support in *Nash v. Sawyer*, 114 Iowa 742. Involved in the *Nash* case was the effort to recover on a special administrator's bond. Elwin Sawyer "was appointed special administrator of the estate by the district court of Audubon County, and gave the bond on which this action was brought." Sawyer, as special administrator, was later ordered to turn over to the general administrator certain property belonging to the estate. Because he refused to thus deliver the property, Sawyer was sued. Contention was made by Sawyer, the special administrator, at the trial, that the Audubon County district court, which appointed the general administrator, did not have jurisdiction because the decedent was a resident of Jones County, where another special administrator had been appointed, upon the widow's application. While discussing the question, we said, in *Nash v. Sawyer* (114 Iowa 742), supra:

"The appointment of the special administrator by the Jones County court was invalid, then, for two reasons: First, because no jurisdictional facts were shown, either by petition or in the order making the appointment; and, second, because defendants recognized the appointment as invalid by applying to the Audubon district court for appointment, securing the order, giving the bond, and obtaining possession of the property in virtue of an order of that court."

An element of estoppel was involved, which we there recognized was sufficient to defeat the special administrator's claim. Notwithstanding that, it was said in the opinion, as before quoted, that jurisdiction did not appear, and therefore the judgment of appointment in the Jones County district court could be collaterally attacked. Authority claimed for that pronouncement was *In re Estate of King* (105 Iowa 320), supra. A review of the opinion in that case, however, reveals that the point decided in the *Nash* case was not involved. In *In re Estate of King*, supra, we said:

"His [the applicant for an administrator's] petition for letters recited that the residence of deceased was in Emmet County, thus showing upon its face the want of jurisdiction in Linn County."

That is to say, the record of the probate proceedings collaterally attacked in the *King* case disclosed upon its face that the decedent was not a resident of Linn County, where the jurisdiction was assumed. Nothing whatever is said in the *King* case concerning the record's silence regarding jurisdictional facts, and consequently there was no basis for the assertion relating to collateral attack on that ground in *Nash v. Sawyer*, supra. Generally speaking, there is a presumption that facts exist to support the judgment of a court which has general jurisdiction, although there are no facts recited on the face of the record. This is so unless the record upon which the judgment is based affirmatively shows that there was no jurisdiction. *Hanshue v. Marvin Inv. Co.*, 67 Colo. 189 (184 Pac. 289); *Louisville & N. R. R. Co. v. Tally*, 203 Ala. 370 (83 So. 114); *Eccleston v. Roseberg*, 53 Cal. App. 14 (199 Pac. 859); *Crider v. Sutherland*, 186 Ky. 7 (216 S. W. 57); *In re Application of Sisk v. Wilkinson*, 305 Mo. 328 (265 S. W. 536); *Barnes v. Leevy*, 112 S. C. 426 (100 S. E. 169); *In re Dexter*, 93 Vt. 304 (107 Atl. 134); *Malone v. Meres*, 91 Fla. 709 (109 So. 677); *Smith v. Bittick* (Tex. Civ. App.), 237 S. W. 331; *Knowles v. Kasiska*, 46 Ida. 379 (268 Pac. 3); *Hawkins v. Bryan*, 128 Okla. 27 (261 Pac. 167); *Fletcher v. Superior Court*, 79 Cal. App. 468 (250 Pac. 195).

Whatever the rule may be in this state regarding judgments in matters other than probate proceedings is now immaterial, because this court has definitely asserted itself concerning the rule in probate cases. The conclusion concerning the rule adopted in probate proceedings is consistent with the general doctrine indicated in the many cases of the jurisdictions above cited. Those cases in the various states involve judgments in probate, as well as other subject-matters. As announced in *In re Estate of Kladivo* (188 Iowa 471), supra, this court, in adopting the rule that there should not be collateral attack, was attempting to avoid an evil that such attack under another doctrine would permit. Reference to the excerpt previously quoted from that case will indicate the thought at this point. Orderly procedure in probate matters makes it imperative that there be administration in but one court at the same time. If, by collateral attack, there may be two or more administrators in different courts operating at once, the result would be confusion and chaos. No

hardship is presented in the requirement that those concerned must make a direct attack in the court originally assuming jurisdiction unless the record of that court affirmatively indicates that it did not have jurisdiction. Under Section 10763 of the 1924 Code, supra, the decedent at his death must have been a resident of the county where jurisdiction is taken. Hence, at the threshold of the proceeding, there is presented a jurisdictional question for the court's determination. Proof of such residence must be furnished by the facts and circumstances. Jurisdiction, therefore, cannot be taken by any court without finding the fact of such residence, and we must assume that the court did so find, unless the record pertaining thereto otherwise indicates.

"In appointing an administrator under this statute, the court necessarily decides whether decedent was a resident of the county over which its jurisdiction extends; for, without so finding, it would be without jurisdiction to appoint." *In re Estate of Kladivo* (188 Iowa 471), supra.

"* * * even though decedent's place of residence be a jurisdictional fact, it is one of those jurisdictional facts, as apparent from the language of the above statute, which must be determined by the court from the evidence produced * * *. In other words, the probate court in this state is a court of general jurisdiction, and its proceedings are presumed to be regular until it is shown that they are not. * * * The order admitting a will to probate [under Section 10763, supra,] is effective throughout the state, and may not be collaterally attacked." *Erwin v. Fillenwarth* (160 Iowa 210, 214, 215), supra.

Likewise, we declared in *Murphy, Neal & Co. v. Creighton* (45 Iowa 179), supra, on page 182:

"It is argued that, in order to confer jurisdiction upon the court, there must be property, or an estate, in the county where administration is granted. This may be conceded, and still we think there was jurisdiction to grant the letters in question. The Code nowhere provides the steps to be pursued to obtain letters of administration, as by petition or otherwise; neither is there any provision as to what evidence shall be adduced to prove that there is property or an estate within the county. What evidence there was before the court in this case

on that question we are left to conjecture. Property does not necessarily consist of things tangible. It may have been shown to the court that the interests of this estate demanded that affirmative relief be asked in the action. There was an affirmative claim at least for costs. It is not sufficient that it be shown that the evidence of the existence of an estate in the county did not justify the court in finding that there was an estate. The court had jurisdiction of the subject-matter, and its adjudication cannot be collaterally attacked.''

There was *no* affirmative showing of jurisdiction in *Murphy, Neal & Co. v. Creighton,* supra. See *Cummings v. Lynn,* 121 Iowa 344. Therefore, in the absence of an affirmative showing that there was no jurisdiction, we assumed in the *Murphy* case that the district court had before it sufficient facts when it made the finding. The record being silent concerning such facts, they will be presumed to exist. When assuming jurisdiction in the case at bar, the Linn County district court declared that it was ''fully advised and satisfied in the premises.'' Advised of what? Certainly that the decedent was a resident of Linn County when he died. What did the court mean when it said it was ''satisfied?'' Necessarily that the decedent was a resident of Linn County when he died. According to the record, the decedent, after the mother's death, in the year 1900, lived with various relatives. We cannot presume that the Linn County district court did not have before it facts showing that residence in Linn County. It is true that, in the application, as before stated, the decedent's residence was given as in the state of Iowa. Omission was made of the county. Nothing in the application, however, contradicts the fact that the decedent at the time resided in Linn County. Inconsistency nowhere appears between the application and the finding which it is presumed the Linn County district court in fact made.

Evidence on the part of the appellee, during the trial of the present controversy in Page County, indicated that decedent, when he died, was a resident of Page County. Appellants did not furnish counter testimony to disprove that fact in the Page County proceedings because they took the position that a collateral attack could not be made on a Linn County judgment. If, then, there could be no collateral attack on the Linn County judgment, it was not necessary for appellants to furnish evi-

dence in the Page County proceedings concerning the facts which were actually before the Linn County court. A direct attack alone can be made in the premises. Wherefore, the Page County district court erred, because the proceedings therein amounted to a collateral attack on the judgment of the Linn County district court, and appellants' motion for a directed verdict should have been sustained. Consequently they are entitled to a new trial.

II. Conceding, for the sake of argument, that the foregoing rule is correct, yet appellee urges that the Linn County judgment can be collaterally attacked because of the fraud exercised on that court in inducing it to assume jurisdiction.

We, for the purpose of this discussion, assume, without deciding, that such fraud would subject the Linn County judgment to a collateral attack. Nevertheless, the appellee has not furnished the necessary proof to show the alleged fraud. While it is true, as before indicated, that some of appellee's witnesses in the present trial stated that Floyd E. Jackson's residence when he died was in Page County, yet there is no legitimate inference arising therefrom which indicates that the proceedings in Linn County were fraudulently begun. Witnesses frequently differ on material facts, yet that does not necessarily mean that any of them were perjurers. Someone, as the Linn County district court in its record declared, "advised and satisfied" it "in the premises." Possibly those who thus "advised and satisfied" the court at the Linn County hearing honestly had a different understanding of Floyd E. Jackson's residence from those who testified for appellee at the Page County trial. So, too, it may be that those who, in the manner and way aforesaid, "advised and satisfied" the Linn County district court were right, and those who testified in the Page County district court were wrong. Determination of that controversy cannot be made in a collateral attack. Nowhere does it appear that the applicant for the original administration in Linn County did not act in good faith. Fraud does not appear to have induced the Linn County district court to assume jurisdiction of the administration. Therefore, even on appellee's theory, there could be no collateral attack on the Linn County judgment until fraud is shown. Bad faith was not shown, and hence the attack should have been direct.

Wherefore, the judgment of the district court should be, and hereby is, reversed.—*Reversed.*

MORLING, C. J., and EVANS, FAVILLE, and GRIMM, JJ., concur.