W. F. MARSH, CHARLES MARSH, Guardian, Appellee, v. CHARLES L. HANNA et al., Appellants.

No. 42787.

MARCH 5, 1935.

Starr & Jordan and E. K. Bekman, for appellants.

Roberts & Roberts and R. C. Leggett, for appellee.

ALBERT, J.—The first question raised in this case arises from the following situation:

The original action here was commenced in the name of W. F. Marsh, and petition was filed on the 4th day of October, 1932. Later, after an answer had been filed by the defendants, plaintiff amended, by leave of court, and alleged among other things, that Charles F. Marsh "is the duly appointed, qualified and acting guardian of the person and property of W. F. Marsh, a person of unsound mind". This amendment was answered by a general denial of such allegation, and it is further alleged that the appointment of said Charles F. Marsh, as guardian of said W. F. Marsh and his property and person, was secured by collusion and without complying with the provisions of section 12620 as respecting notice to the defendant, and without complying with the provisions of section 12617 of the Code of Iowa. Later, on the 29th of June, 1933, the defendants moved the court to expunge from the record the order of substitution of Charles F. Marsh, as guardian of the plaintiff, W. F. Marsh, and as grounds therefor alleged the failure to comply with the aforesaid sections of the Code, and alleged that no notice of such application for appointment of guardian was served on W. F. Marsh. This motion seems not to have been ruled on by the court, but, as the court entered a decree in favor of the plaintiff, we assume that it inferentially thereby overruled this motion. The defendants insist that by so doing the court committed error.

The application for this guardianship was filed on the 24th of May, 1933, in the court where this case was pending, alleging, among other things, that W. F. Marsh was incapable of looking after his own business, and that "at the present time his mind is diseased and unsound". This petition was signed by Roberts & Roberts, as attorneys for the applicant. An order was made in the district court in and for Wapello county, in probate, ordering that "Charles F. Marsh be and he is hereby appointed guardian of the property of said applicant, W. F. Marsh, with power and authority to do and perform all things necessary for the protection of the property rights of said applicant, including the right to prosecute the suit now pending in the district court of Wapello county, Iowa, brought by said W. F. Marsh against Loren C. Hanna et al., being Equity No. 14739, to set aside a deed executed by said W. F. Marsh to property located in Wapello county, Iowa." Bond was fixed and the order signed by the presiding judge. Letters of guardianship were accordingly issued on the 29th of May, 1933, by the clerk of said district court. It was in pursuance of this appointment that

Charles F. Marsh was substituted as plaintiff. It is now urged that this appointment was void and therefore that the motion aforesaid should have been sustained. Aside from the exhibits showing copy of the petition, the order of appointment, and the letters of guardianship, which were introduced in evidence, no evidence is introduced touching this question.

■ It will be noted that this guardianship appointment was made in the district court of the county where this case was pending. It has been decided too often to need the citation of authority that, the district court being a court of general jurisdiction and also a court of record, jurisdiction is presumed; but it is to be noted that, in addition to this, the heading of these papers is, "In the probate court". Equally the presumption prevails that, under these circumstances, the probate court is a court of general jurisdiction, and its proceedings are presumed to be regular unless shown otherwise. Erwin v. Fillenwarth, 160 Iowa 210, 137 N. W. 502, also McFarland v. Stewart, 109 Iowa 561, 80 N. W. 657, where it is said that a court taking jurisdiction in probate is presumed to have found facts such as would give it jurisdiction.

Under these rules, it is presumed that jurisdiction existed to make the appointment of such guardian, and, as there was no evidence introduced to the contrary, this presumption must prevail and the court rightfully overruled the aforesaid motion.

The basis on which it is sought to set aside the deed in controversy herein is the grounds of fraud, mental incapacity, confidential relations, and inadequacy of consideration.

A general review of the facts as disclosed by the record shows the following:

■ W. F. Marsh was at one time a resident of Iowa, and was the owner of the 170-acre farm in controversy herein. Some time in the neighborhood of the year 1917, he and his family moved to California, where they have ever since resided. There is nothing in the record to show that he ever returned to Iowa, and all the transactions involved in this case between him and the defendants were by correspondence. Many of the letters passing between them have been introduced in evidence, and it is useless to attempt to set them out in this opinion. It appears also from the record that Marsh was thrifty and accumulated a fair share of property, and at or about the time of the transaction involved herein, the farm in controversy was free from lien or incumbrance. One

Enyart was cashier of the bank at Agency and looked after the renting and care of this farm of Marsh's until the 9th of January, 1929, when C. L. Hanna wrote Marsh as follows: "I think the best thing for you is to notify Enyart that I am looking after the farm." Following this letter, Marsh turned over the handling and management of the farm to Charles L. Hanna. Prior to this, Hanna had written Marsh that he (Hanna) would look after his (Marsh's) affairs just like they were his own. At the time of the trial, Marsh was about eighty-four years of age.

Between the 7th of April, 1930, and the 26th of January, 1932, the following deeds were executed by or in favor of W. F. Marsh covering the land in controversy:

A deed from Wm. F. Marsh to Jennie McGuire, dated April 7, 1930, consideration $1.00 and services rendered. A deed from Jennie McGuire to Wm. F. Marsh, dated June 3, 1930, consideration $10. A deed from Wm. F. Marsh to Charles L. Hanna, dated November 4, 1931, consideration $10. A deed from Charles L. Hanna and wife to Wm. F. Marsh, dated December 11, 1931, consideration $10. A deed from Wm. F. Marsh to Loren C. Hanna, dated January 26, 1932, consideration $10.

This last deed is the deed in controversy in this action.

The evidence in the case shows that Jennie McGuire went to California in January, 1928, and took care of Mrs. Marsh, who was an invalid and also an aunt of Jennie. Mrs. Marsh died in March, 1930, but Jennie continued with Marsh until the 25th day of March, 1931. Her compensation was $15 a week, a part of which was held back by Marsh on account of financial distress. In one of his many letters Marsh explains this transaction with Mrs. McGuire. On June 3, 1930, Jennie McGuire deeded this farm back to Marsh. The next deed, from Marsh to Hanna, seems to have been made on account of the fact that Marsh got into financial troubles in speculating in stocks in California, and he voluntarily made this deed to Charles L. Hanna for the purpose of hindering, delaying, and defrauding his creditors. Following the receipt of this deed by Hanna he sent Marsh a contract for signature, which recited that in consideration for the deed previously made and recorded Hanna would support Marsh the remainder of his life, etc. This contract was never signed. Instead, Marsh insisted upon and obtained a reconveyance. In his letter of November 3, 1931, Marsh stated that he was making out the deed and would send it

to Hanna with a trust deed for Hanna and Hulda to sign and return to him. Following this correspondence, Hanna deeded the land on December 11, 1931, to Marsh for the recited consideration of $10, which is shown not to have been paid.

As to the deed in controversy, bearing date of January 26, 1932, from Marsh to Loren C. Hanna, the record shows, in substance, that correspondence had been passing between Marsh and Charles L. Hanna relative to making a loan on this farm. Originally the correspondence shows a contemplated loan of $5,000. Later this was reduced to $3,000, and still later to $1,500. Charles L. Hanna attempted to make this loan of $1,500, but could find no person who would accommodate them. Marsh seems to have been in need of ready money and this was the cause of the attempt to make this loan. Charles L. Hanna, however, seems to have had some trust funds on hand and he proposed to Marsh to lend him these trust funds, the proposition being that Marsh would deed the farm to Loren C. Hanna (son of Charles L. Hanna), who would make a $1,500 mortgage on the same. Pursuant thereto, Marsh deeded the land to Loren C. Hanna and the loan was made by Loren C. Hanna's placing a mortgage on the same for $1,500, $760 of which was then forwarded to Marsh. At the time of making this last-named deed, a memorandum of agreement was signed by Marsh, reciting:

"Second party has this day conveyed to the son of first party, Loren C. Hanna, his farm of one hundred seventy (170) acres in Wapello County, Iowa, which deed is delivered concurrently with the execution of this agreement.

"In consideration for such conveyance, first party agrees on his part to furnish to second party a good and comfortable home with room to himself in the home of the first party in Wapello County, Iowa, and to give him good care and clothing, food and lodging in the home of first party, and to give the second party nursing and medical attention when he is ill so long as second party shall live. First party further agrees that upon the death of second party he will give him a respectable burial."

At the time of this transaction in January, 1932, Marsh was eighty-two years of age. As far back as May, 1927, he was afflicted with hardening of the arteries, arteriosclerosis, and high blood pressure. In July, 1928, he had a slight stroke, involving his

right leg, sufficient to prevent his being able to walk for some time. He gradually recovered the use of his leg. In July, 1931, he had a sick spell of several weeks' duration, when he required the services of a nurse and caretaker. Some fifteen to sixteen months after this deed was executed, his attending physician found that he was suffering from senile dementia and was mentally incompetent.

It is generally gatherable from the record that, by correspondence, Charles L. Hanna was quite familiar with the situation of Marsh, as it existed in California during all the time in controversy herein. He was advised as to the making of the deed to Jennie McGuire and the reconveyance; also as to the financial troubles of Marsh during this time, and the conduct of Marsh in demanding the reconveyance from Charles L. Hanna to him, as well as to the health of the said Marsh during that time. Marsh's correspondence shows that at the time of and shortly prior to the conveyance in controversy he was very mercurial in his notions as to the handling of this farm and financing the same, as in some instances his letters as to what he wanted done or how it was to be done would be in conflict with each other. His actions and conduct in all these transactions with Hanna were sufficient to be a warning to Hanna that Marsh was, at least, mentally disturbed. In other words, we think the record warrants the conclusion that Hanna was in a position to, and did, overreach Marsh in this latter transaction. The dealings between Marsh and Hanna resulting in this deed to Loren C. Hanna were wholly between Charles L. Hanna and W. F. Marsh. Loren C. Hanna seems to have had little to do with the transaction. He was not a party to the agreement heretofore set out to support Marsh. He testifies that he now owns the farm in controversy, and there are no strings, or restrictions, or liens against the title except the $1,500 that he borrowed from his father. He had no correspondence himself with W. F. Marsh. He volunteers to carry out the contract made by his father to support Marsh as therein provided. As to this contract, Marsh had repeatedly written Charles L. Hanna that his health was in such condition that he could not live in and would not return to Iowa. This he repeated numerous times throughout this correspondence. Loren C. Hanna never gave any consideration whatever for the deed in controversy, although this land is shown to have been worth at the time about $10,000. It would appear, therefore, from the record in the case, that Charles L. Hanna took advantage of Marsh's weakened mental condition, as

well as his financial distress, and induced Marsh to sign this deed and agreement, knowing at the time that Marsh's physical condition was such that he could not return to and live in Iowa. Testimony was introduced on both sides as to the mental condition of Marsh at the time the deed in controversy was executed. He was examined a short time before the trial was had in 1933, and competent medical experts testify that he was then suffering from senile dementia and was of unsound mind; that senile dementia is of steady and continuous growth; and that the same existed as to Marsh for three or four years prior to the time of the trial. This would carry such condition back to a time prior to the date this deed was made.

It is also urged that a fiduciary relationship existed between the defendants and the plaintiff. There is some testimony in the record tending to sustain this contention. While as a matter of fact, the original relationship between these parties was that Charles L. Hanna was agent for Marsh, which alone and of itself would not create a fiduciary or confidential relation (see Douglass v. Lougee, 147 Iowa 406, 123 N. W. 967), yet, we think that the evidence in the case shows more than a simple agency. The correspondence shows that Marsh relied largely on the advice of Charles L. Hanna in all these transactions; that the making of this deed and agreement were suggested by Hanna and accepted by Marsh. The consideration for the deed in controversy, recited as $10, was never paid. The agreement made between the parties was never carried out, and Charles L. Hanna was fully advised that it could never be carried out on account of the condition of the health of Marsh.

When Marsh, through his nephew (the guardian herein), took this matter up and asked that the land be reconveyed and the contract canceled, he was advised that, in order to do so, three things must be done: (1) the present loan on the farm, executed by Loren C. Hanna, must be paid off; (2) Hanna must be paid $1,500; and (3) his attorneys must be paid $200.

We reach the conclusion that, in the light of the record in this case, and after studying the extensive correspondence, taking into consideration the relationship that existed between these parties, the inadequacy of consideration for the deed, the mental condition of Marsh at the time the deed was made, the advantage that Hanna had, and took, over Marsh, equity warrants the conclusion reached by the district court. We reach this conclusion from a careful study

of the whole record, which, as we have said, is made up largely of correspondence between the parties and is too extensive to set out in detail.—Affirmed.

ANDERSON, C. J., and DONEGAN, RICHARDS, PARSONS, and POWERS, JJ., concur.