JOHN E. REININGHAUS, Appellee, v. THE MERCHANTS' LIFE ASSOCIATION, Appellant.

**Opinion Evidence:** APPARENT PHYSICAL CONDITION. In an action on a life policy, where the company alleged that the insured at the time of the issuance of the policy was, and for a long time had been sick of several serious diseases, well known to her and her husband, the beneficiary, and the examining physician, non-expert witnesses, who were well acquainted with the insured, and met and visited with her, were competent to testify as to her apparent physical condition during the later years of her life.

COMPETENCY OF PHYSICIAN WITNESS: *Sufficient examination.* In an action on a life policy, where the company alleged that the insured at the time of the issuance of the policy, was, and for a long time had been, sick of several diseases, well known to her and her husband, the beneficiary, and the examining physician, the testimony of a physician who several years before the issuance of the policy had treated the insured, and had met her occasionally since then, and had observed her apparent condition, as to her appearance, with reference to a diseased condition of the liver, was admissible; the objection that he had not examined her sufficiently to have formed an opinion not going to the competency of the evidence, but merely to its weight.

**Conspiracy.** EVIDENCE. In an action on a life policy, where the company alleged that the insured at the time of the issuance of the policy was, and for a long time had been, sick of several serious diseases, well known to the insured and her husband, the beneficiary, and the examining physician, and that, pursuant to a conspiracy to defraud the company, she falsely answered many of the questions asked at the examination, evidence that the husband knew of the hopelessness of his wife's condition was admissible, as tending to sustain the defense.

*Appeal from Van Buren District Court.*—HON. T. M. FEE, Judge.

SATURDAY, APRIL 12, 1902.

ACTION at law upon a policy or certificate of insurance by defendant upon the life of Lillian Reininghaus. Verdict and judgment for plaintiff, and defendant appeals.—*Reversed.*

*Seerly & Clark* for appellant.

*Wherry & Walker* for appellee.

WEAVER, J.—The certificate of membership was issued to Mrs. Reininghaus February 7, 1899, and she died on the twenty-second day of May, thereafter. Proper proofs of death were made, and the defendant made and collected an assessment upon its members for the payment of the loss thus occurring, but subsequently refused to make payment, alleging that the insurance was procured by fraud; and such is the defense pleaded to the action brought to recover on the certificate. It is alleged that at the time Mrs. Reininghaus applied for membership in the defendant association she was, and for a long time had been, sick of several diseases of a serious nature; that said fact was well known to her and to the physician who acted as medical examiner for the said association; that said applicant and her husband and said physician conspired to deceive and defraud the defendant into the issuance of such certificate of insur-

ance; that, in pursuance of such fraudulent purpose, Mrs.
Reininghaus falsely answered many of the questions pro-
pounded to her, and falsely stated that she was then in good
health and free from disease; that the physician well knew
her sick condition, and that she was not an insurable risk,
but assisted her in deceiving the defendant; that defendant
was thereby deceived, and would not have approved the ap-
plication, or issued the certificate, but for the fraud so prac-
ticed upon it. In view of the fact that, for reasons herein-
after stated, there must be a new trial, we shall avoid any ex-
pression of opinion upon the facts, but proceed to consider
such assignments of error as are properly presented.

I. Of the sixty-three errors assigned, twenty are based
upon the exclusion by the trial court of the testimony of
witnesses who had known Mrs. Reininghaus during the latter
years of her life as to her apparent physical condition.
For example, Mrs. Tiffy, a witness who had met and
visited with the deceased in 1898 and 1899,
was asked the following questions: "Q. In 1898,
state whether Mrs. Reininghaus was sick at any time during
that year? Q. Did she have smothering at her last sickness?
Q. During the last sickness of Mrs. Reininghaus, did she have
smothering spells, in which she was unable to breathe?"
Another witness was asked: "Q. What was the change in her
condition, if any, during that time? Did she grow stronger,
or weaker?" Answers to all these questions, and very many
others of like nature, were ruled out on the ground that the in-
terrogatories called for the conclusions of the witnesses, and
that the witnesses had not been shown competent to testify.
These rulings were clearly erroneous. The testimony sought
to be elicited does, it is true, partake of the nature of a con-
clusion; but it is one of those conclusions which are so in-
separable from the facts upon which they are based that the
law makes them competent evidence, even by a non-expert
witness. It has often been held proper for a witness to state

whether a person with whom he was acquainted was sick or
well or healthy or weak or strong, and to describe such symp-
toms as are apparent to an ordinary or non-expert observer.
It is under a similar rule of every-day application in trial
courts that witnesses are permitted to testify that a person
was pleased or excited, or spoke earnestly or jestingly, and
many other matters of mixed fact and opinion. The limita-
tions of human language are such as to render these rules a
necessity. Many mental and physical conditions manifest
themselves with practical certainty to the eye and mind of the
ordinary observer, who cannot describe in apt terms the facts
upon which his conclusions are based, but it does not neces-
sarily follow that the conclusion is inadmissible as evidence.
For a clear statement of the general doctrine, and citation of
authorities, see Abbott, Trial Evidence (2d Ed.), page 408;
also *Kostelecky v. Scherhart,* 99 Iowa, 120; *Bailey v. City of
Centerville,* 108 Iowa, 20; *Yahn v. City of Ottumwa,* 60
Iowa, 429; *Stone v. Moore,* 83 Iowa, 186. Under these au-
thorities, we are constrained to hold that the ruling of the
district court in excluding this class of evidence was preju-
dicial error.

II. One Dr. Jones was called by defendant, and tes-
tified that some years prior to the death of Mrs. Reininghaus
he had attended her professionally, and that after he ceased
such treatment, and up to the time of her death, he met her
occasionally upon the street, and elsewhere, and observed her
apparent condition. After having testified to the effect of
certain diseases upon the human liver, he was asked, "What
would you say with reference to Mrs. Reininghaus' appear-
ance, with reference to this difficulty with the liver?"
and the answer was excluded on the ground that the
witness was not shown to have examined Mrs. Rein-
inghaus sufficient to have formed an opinion." The objec-
tion should have been overruled. The insufficiency, if
any, of the examination, is a matter which goes to the weight,

rather than the admissibility of the physician's opinion. An offer was made by defendant to prove by this witness that, prior to the issuing of the policy in suit, he had talked with plaintiff, John E. Reininghaus, who is beneficiary under said policy, and explained to him the hopelessness of his wife's condition, and that said Reininghaus replied that he knew it was only a question of a short time, and that it was impossible for his wife to be cured. An objection to this offer that it was incompetent, irrelevant, and immaterial, and does not tend to show fraud or deceit on part of Mrs. Reininghaus in procuring the physician's certificate, was sustained. In this ruling the court erred. It was the theory of the defense that this woman was plainly and notoriously sick, and tending rapidly to death, both before and at the time of her application for insurance, and that this fact was known to her and her husband and the physician, and that these three persons combined and conspired together to deceive and defraud the company into a belief that she was an insurable risk. There was evidence tending to sustain this defense. Proof, therfore, that the husband was informed of her diseased condition, and admitted knowing she was hopelessly sick, was of manifest materiality in establishing one of the material elements of the defense pleaded. The husband's knowledge of her condition, and his fraudulent purpose, would not, of course, be conslusive of fraud on the part of his wife; but it would be a very important fact to be considered in determining whether there was any such corrupt combination as charged in the answer, and whether by such means the insurance was effected.

Other exceptions urged by the appellant we think not well taken, or of such character that they are not likely to arise on a retrial.

For the errors we have pointed out, the judgment of the district court is reversed, and the cause remanded.—RE-VERSED.