LYDIA SPIERS, Proponent, Appellee, v. FRANK L. HENDERSHOTT ET AL., Contestants, Appellants.

**Evidence:** NON-EXPERT EVIDENCE OF MENTAL UNSOUNDNESS: FOUNDATION: DISCRETION. Non-expert opinion of mental unsoundness must be based strictly upon the facts and circumstances first detailed by the witness. And while the court is vested with some latitude of discretion as to the form of the question, a refusal to grant such latitude is not legal ground of complaint; as where the question called for an opinion based not only upon the facts testified to, but also in part upon what the witness saw, it was not strictly within the rule, and therefore the court's refusal to permit the witness to answer is sustained.

**Same.** The trial court has some discretion in determining whether the facts testified to are sufficient to base a nonexpert opinion of mental unsoundness upon; and where the witness had testified simply to a conversation with the testatrix in which she stated that her chickens had been stolen, that the witness observed a difference in her actions and conversation, and that she was not as careful about her housework as she once was, the facts were so meager that it was within the discretion of the court to permit or refuse the opinion.

And where the question propounded entirely ignored the nonexpert character of the witness refusal to receive the answer was proper.

**Wills: MENTAL CAPACITY: EVIDENCE: PHOTOGRAPH.** Where the contestants of a will undertook to describe the physical appearance of testatrix, the admission of a photograph as bearing upon that question, taken about the time of making her will, was a matter of discretion; and even though of little weight on the real issue still it was not prejudicial and its admission was not therefore erroneous.

**Evidence: TESTIMONY ON FORMER TRIAL: TRANSCRIPT.** A transcript of testimony can only be used in a retrial of the cause in which it was taken; so that evidence taken on the contest of a will can not be used in the subsequent contest of a different will.

**Evidence: MENTAL CAPACITY: LIMITATION OF AS TO TIME: CONCLUSION OF SUBSCRIBING WITNESS.** An objection that the inquiry of a subscribing witness to a will, "Do you consider her of sound or unsound mind?" was in the present tense was obviated by the answer of the witness that he considered her of sound mind "at that time;" as was also the objection that the inquiry fixed no time. And the objection that the inquiry called for a conclusion is not tenable, as a subscribing witness to a will may give his opinion as to the testators mental capacity.

**Same: HYPOTHETICAL QUESTIONS.** A hypothetical question may embrace all facts which the evidence tends to prove, but if a party incorporates facts not proven to the satisfaction of the jury he does so at his peril.

**Wills: UNDUE INFLUENCE: EVIDENCE.** Evidence simply that the subscribing witnesses to a will were distant relatives of the testatrix, one of whom drew the will without suggestion except as to formalities, and at her request went to her residence for that purpose; that the beneficiaries were residents of a foreign State with whom they had no acquaintance, and there was no showing

of any motive for obtaining the will in their favor, was insufficient to justify the submission of the claim of undue influence.

**Wills:** MENTAL UNSOUNDNESS: EVIDENCE. Where the proponents of a will joined the contestants in the claim that testatrix was mentally unsound at a certain date, an adjudication of her mental unsoundness at a subsequent time was immaterial and properly excluded.

**Same:** INSTRUCTIONS. Omission to define the requisites of mental capacity sufficient to make a will, in an instruction directing that if contestants had shown mental incapacity at a certain date then the burden was on proponents to show its execution at a time when testatrix understood the nature of the transaction, was not objectionable, where the matter was fully covered in other instructions.

**Wills:** INEQUALITY OF PROVISIONS: INSTRUCTIONS. Although an instruction standing alone may practically eliminate a consideration of the unequal and unreasonable provisions of a will, as bearing on the question of mental capacity, yet if when read in connection with another paragraph of the charge the law on the subject is correctly stated, it will be sustained.

**Same:** MENTAL CAPACITY: GUARDIANSHIP: PRESUMPTION. The appointment of a guardian for a testator raises the presumption of mental incapacity at the time of the appointment, and may be considered on the question of mental incapacity at the time of making a prior will; still the legal presumption as such will not relate back to the time of making the will.

**Same:** INCONSISTENT FINDINGS. Where practically all of the testimony in a will contest indicates testatrix' progressive mental decay until the time of her death, a finding that she had mental capacity at the time she made her will was not inconsistent with another finding that at a date somewhat subsequent thereto she did not possess such capacity.

*Appeal from Cedar District Court.*—HON. F. O. ELLISON, Judge.

MONDAY, MAY 10, 1909.

THIS is a proceeding in probate involving the validity of the will of Hannah Hendershott. The proponent, Lydia Spiers, is the principal beneficiary thereof. The contest

ants are collateral heirs of the deceased. There was a verdict sustaining the validity of the will, and the same was thereupon admitted to probate by proper order of the court. The contestants appeal.—*Affirmed.*

*Henry Negus, Baker, Ball & Ball, R. J. Smith* and *C. H. Workman,* for appellants.

*J. H. Preston, Charles Mather* and *I. T. Siddall,* for appellee.

EVANS, C. J.—Hannah Hendershott died in April, 1904. She had never been married, and she left surviving her collateral heirs only. On January 22, 1898, when seventy-one years of age, she executed the will involved in this controversy. On that date her sister, Mrs. Dunloff, was living in the State of Ohio. This sister had been a helpless invalid for many years, and had been cared for in the home of her daughter, Lydia Spiers, the proponent herein. The testatrix devised her entire estate, consisting of about $7,000, to the use of her invalid sister and the daughter. On February 23, 1898, the deceased executed another will, and entered into a contract with one Calvin Gruwell whereby she agreed in substance to devise her entire estate to him in consideration of care and support during the remainder of her life. On October 13, 1898, she executed a revocation of all wills theretofore made. In November, 1898, a guardian was appointed for her by the district court of Cedar County, and he instituted litigation on behalf of his ward to set aside the contract with Gruwell. After the death of the testatrix, the will of February 23, 1898, was offered for probate, but its probate was successfully contested. Thereupon the proponent presented for probate the will now under consideration. The contestants resisted the probate on the alleged ground of undue influence and mental unsoundness, and that the will

was duly revoked by the instrument of Ocober, 1898. The proponent attacked the instrument of revocation on the ground that it was obtained by undue influence, and, by a later amendment, on the ground of mental unsoundness. The verdict of the jury sustained the validity of the will, and the court entered judgment accordingly.

The testimony on behalf of the contestants tended to show that the testatrix began to fail bodily and mentally some time prior to January, 1898; that her disease was *senile dementia;* that it was progressive, and that she constantly grew worse up to the time of her death. The testimony on behalf of proponents tended to show that prior to January, 1898, she had lost some of her former vigor, bodily and mental, but that she was fully competent on January 22, 1898, to make a will, and that she did make it in accordance with a previous purpose of long standing. It tends also to show that after this date, and especially in the summer of 1898, she failed mentally to a marked degree, and that in October of that year she was mentally unsound. We will consider the errors specified by the appellants in their order in the presentation of argument, as near as may be.

I. The first three errors assigned relate to the opinion of nonexpert witnesses, and we will consider them together. Mrs. Vincent testified for the contestants, and testified to a certain conversation she had with the testatrix wherein the testatrix said that her chickens had been stolen. She also testified that she noticed a difference in her conversation and actions, and that her housekeeping was not as careful as it used to be. Contestant's counsel put to her the following question, which was ruled out by the court: "Judging from what you say, and from what you saw there, and what you stated of Hannah's action and conversation, what would you say as to whether she was of sound or unsound mind?" The witness Cogshall, a bank cashier, was

*1. Evidence: nonexpert opinion of mental unsoundness: foundation: discretion.*

permitted to testify to certain conversations with the testatrix wherein she expressed a belief that some of her certificates of deposit had been stolen, and that the witness noticed a difference in her actions. He was permitted to testify without objection to the effect that he thought she was of unsound mind on February 23, 1898. Thereupon contestants' counsel put to him the following question: "What do you say as to whether she was of sound or unsound mind during all the time you have testified about in regard to certificates and other matters in the bank?" Also the further question: "From what date would you say she was of unsound mind, in your judgment?" These questions were ruled out as incompetent. The rule is that nonexpert opinion of mental unsoundness must be based strictly upon facts and circumstances, which are first detailed by the witness. In other words, the jury must know the very facts and circumstances upon which the opinion is based. While some latitude of discretion may be permitted to the trial court as to the form of the question, yet if the trial court refuses such latitude, it furnishes no legal ground of complaint. The question propounded to Mrs. Vincent required her to base her opinion not only upon the facts testified to by her, but also upon what she "saw." The question, therefore, was not in strict compliance with the rule.

Some latitude, also, must be permitted to the trial court to determine whether the facts testified to by the witness are sufficient to base an opinion of mental unsoundness thereon. The facts testified to by Mrs. Vincent were very meager for that purpose, and the question was so close that we think it was clearly within the discretion of the trial court to permit or refuse an opinion of mental unsoundness to be based thereon. The questions propounded to the witness Cogshall lost sight entirely of the nonexpert character of the witness, and they were put in the same form as though the witness

2. SAME.

had been an expert. There was no error, therefore, in the ruling of the court. *In re Will of Norman,* 72 Iowa, 84; *Severin v. Zack,* 55 Iowa, 28.

II. The proponent was permitted, over objection, to introduce in evidence a photograph of the deceased which was shown to have been taken shortly after the will in question was made. It is argued that this was improper and prejudicial. Some of the witnesses on behalf of contestants had undertaken to describe the appearance of the testatrix, and that she was "thin and poor." If her physical appearance was a proper subject for consideration, a photograph might naturally be of some aid. Appellants bring to our attention some authorities which look with much disfavor upon photographs as instruments of evidence. Such has not heretofore been the attitude of this court, and we think the authorities in question greatly exaggerate the danger of the use of photographs, and the reasons urged for their rejection do not appeal to us as sound. It is argued that the jury should not be permitted to determine the mental condition of the testatrix from the appearance of her photograph, and this is clearly true. The offer of it did not purport to be for such purpose. Appellants could have asked for an instruction on that feature if they had so desired. It was only one item of evidence bearing upon the physical appearance, and the degree of emaciation. It may be conceded in this case that a photograph had very little function to perform. We are unable, ourselves, to see wherein it could subserve much use to the proponent, and it is clear to us that it could work no prejudice to the contestants. Its admission or rejection was within the fair discretion of the trial court, and appellants have no legal ground of complaint at this point.

III. The contestants offered in evidence a transcript of the testimony of witnesses Michner and McClelland given on the trial of the contest of the will of February

*3. WILLS: mental capacity: evidence: photographs.*

23d. It is urged that, inasmuch as the will of the same testatrix was involved in that case, it should be deemed the same proceeding as the present case, and that the transcript of such evidence was therefore admissible. The abstract shows that an objection was sustained to this offer, but it does not disclose to us what the objection was. Assuming a proper objection, it was properly sustained. Appellants rely upon section 245a, Code Supp. 1907. This section renders such transcript admissible "on any retrial of the case or proceeding in which the same were taken." Such transcript can be used only in the same case, and upon a "retrial." *Walker v. Walker,* 117 Iowa, 609; *Wiltsey v. Wiltsey,* 122 Iowa, 423. The present contest of the will of January 22d is not a retrial of the contest of the will of February 23d. That contest went to final judgment. No retrial thereon was permitted. The invalidity of the will of February 23d was determined therein. That question is not involved in this trial. There was no error in this ruling.

*4. EVIDENCE: testimony on former trial: transcript.*

IV. Errors 6, 7 and 8 are argued together. Proponent put the following question to William Mather, one of the subscribing witnesses: "My question was, do you consider her of sound or unsound mind? A. I considered her to be of sound and disposing mind at that time." Contestants duly objected to both question and answer. Three grounds of objection are urged here. It is urged that the question was in the present tense. This objection is met by the fact that the answer was in the past tense.

*5. WILLS: mental capacity: limitation of evidence as to time: conclusion of subscribing witness.*

It is further urged that no time was fixed. The question indicates a reference to a previous question which is not set forth in the abstract. We think the answer fairly indicates a reference to "that time" as the time of making the will.

It is also urged that the answer was a mere conclusion

of the witness. It was a conclusion in the sense that it was the opinion of the witness. He was a subscribing witness, and his opinion, as such, was admissible in support of the mental capacity of the testatrix. *Parsons v. Parsons,* 66 Iowa, 754; *Hertrich v. Hertrich,* 114 Iowa, 643.

Appellants urge objection also to the form of hypothetical question put to the witness, Dr. Baker. It is too lengthy to be here quoted. The principal objection urged is that it recited facts not proved. To this

6. SAME: hypothetical question.

it is sufficient to say that there was evidence tending to prove all of the facts recited, and this is all that is necessary to justify their incorporation in a hypothetical question. If a party incorporates in a hypothetical question facts not proved by the evidence to the satisfaction of the jury, he does so at his peril. If his facts fail in the opinion of the jury, the expert opinion based thereon must fall to the ground. Appellants were entitled to an instruction to that effect, if they had asked it. The court properly permitted the hypothetical question.

V. The trial court withdrew from the consideration of the jury the issue of undue influence, on the ground that the evidence was wholly insufficient to support the allegation. The only evidence which appel-

7. WILLS: undue influence: evidence.

lants point out in the record which they claim tends to prove undue influence is that of the subscribing witnesses, William and Charles Mather, to the effect that they went to the home of the testatrix more than once, for the purpose of making such will, before the will was finally drawn. William Mather wrote the will at the home of the testatrix. This was in pursuance of a request on the part of the testatrix, made a considerable time previous to the date on which the will was made. She did not want the fact to gain publicity. He took with him his brother, Charles Mather, to be a subscribing witness. They were distant relatives of the testa-

trix. According to their testimony, the will was drawn precisely in accordance with the wishes of the testatrix, and without any advice on their part, except as to the formalities. The beneficiaries named in the will were resident in Ohio, and the Mathers were personally unacquainted with them. So far as appears, they were wholly without motive to obtain the execution of a will in favor of these beneficiaries. There was no other evidence in the case on the issue of undue influence. The trial court was clearly right in withdrawing the issue from the consideration of the jury.

VI. It appears from the record that in November, 1898, one Smith was appointed as guardian for the testatrix. As such guardian he brought an action against Calvin Gruwell to set aside a contract made between him and the deceased, which action was prosecuted to a final decree in his favor. The contestants offered in evidence the record of the proceedings in that case, including the pleadings and judgment. They were first admitted and then stricken, and appellants complain of such ruling. It is urged in argument that the judgment in that case was an adjudication of the mental unsoundness of the testatrix on February 23d. If that be conceded, it avails the appellants nothing. It is not claimed that it was an adjudication of mental unsoundness on January 22d. The proponent joins the contestants in the claim that some time after January 22d the testatrix was mentally unsound. The ruling of the court was therefore proper.

8. WILLS: mental unsoundness: evidence.

VII. Complaint is made of a number of instructions. Appellants attack the instructions in detail, and complain of their omissions. In instruction 5, the trial court instructed the jury that if contestants had shown mental unsoundness or disease in testatrix on or prior to January 22d, then the burden was upon the proponent to show that the will was executed

9. SAME: instructions.

at a time when the testatrix understood the nature of the transaction. It .is argued here that the court failed to explain more in detail what were the requisites of mental capacity to make a will. This question was fully gone into, however, by the court in instructions 8 and 9. Appellants complain of these latter instructions on the alleged ground that they are inconsistent. We do not find them so. Instruction No. 9 does involve some repetition, but the two instructions together are in practical accord with instruction No. 4 requested by the contestants themselves. They fully supply the alleged omissions complained of in instruction No. 5.

VIII. In instruction No. 11 the court instructed the jury that, if they found "that there was inequity or inequality in the provisions of the will, you may consider the same in determining the mental capacity of the testatrix at the time of the execution of the will." Instruction No. 12 advised the jury, however, that every person of testamentary capacity had a right to make a will as he saw fit, no matter how unusual or unreasonable, and that, if they found that the testatrix in this case had sufficient mental capacity, they would have no right to defeat her will on the ground of unequal provisions. Instruction No. 13 was to the effect that unreasonable provisions are not of themselves sufficient to warrant a finding that deceased was of unsound mind, but all such matters might be considered with other facts and circumstances in determining her mental condition. It is argued that instruction No. 12 eliminated the question of unreasonable provisions from the consideration of the jury, and that it was inconsistent with the other instructions on that subject. The point is not well taken. The three instructions, together, correctly stated the law in that regard.

10. WILLS: inequality of provisions: instructions.

IX. The trial court permitted the contestants to introduce in evidence the record of the guardianship proceed-

ings whereby a guardian was appointed for the testatrix in
November, 1898.    Instruction No. 14 in-
structed the jury that they might consider
such evidence in determining the mental con-
dition of the testatrix at the time of making
the will, and at the time of the alleged revocation.    Ap-
pellants complain of the instruction, in that it failed to
state to the jury that the appointment of such guardian
was presumptive evidence of mental incapacity to make a
will.    Granting the contention that the order of the ap-
pointment of guardian created a presumption of mental
incapacity on the part of the testatrix to make a will,
such legal presumption could not relate back to a time ante-
dating the proceeding resulting in such appointment.    The
appointment of a guardian did create a presumption of
mental incapacity as of that time, and the fact was proper
for the consideration of the jury on the question of mental
incapacity as of the time the will was made, but the legal
presumption as such could not relate back to the date of
the will.

X.    It is contended that the verdict is without sup-
port in the evidence.    This contention is twofold:    First,
it is said that the evidence is conclusive of mental unsound-
ness of testatrix on January 22, 1898.    Sec-
ond, if this be not so, then it is said that,
if the testatrix had mental capacity to make
the will of January 22d she necessarily had capacity to ex-
ecute the revocation on October 13th.

Neither contention can be sustained.    The real con-
test in the case was over the question of fact, whether the
mental disability of the testatrix had progressed to such a
stage on January 22d that she was incapable of making an
intelligent and valid will.    The evidence was in conflict
on that question.    There was sufficient support in the evi-
dence for a verdict either for or against the validity of the
will, so far as the mental capacity of the testatrix was

concerned. The jury found against the contestants on that question. Practically all the testimony on both sides tended to show progressive mental unsoundness up to the date of the death of testatrix.

Contestants put in evidence the record of the proceedings for the appointment of a permanent guardian. These proceedings were commenced about the time the revocation was executed. The final order was entered therein in November of the same year. The probative force of these proceedings necessarily bore more heavily upon the execution of the revocation in October than upon the execution of the will in the January previous. The evidence abundantly justified a finding of a material difference in the mental condition of the testatrix in October, as compared with January. We can not say, therefore, that the verdict is without support in the evidence, nor that any inconsistency is involved in finding the will valid and the revocation invalid.

We do not overlook the argument of appellants that they never pleaded that the testatrix was of unsound mind at the time she executed the revocation; but that, on the contrary, they pleaded the revocation as a valid instrument. However, the whole tendency of their evidence was that the mental condition of testatrix was bad in January and still worse in October.

The foregoing covers the principal points urged by the appellants as grounds for reversal. Other and minor errors are argued. What we have already said is decisive of all questions presented, and we will not pursue the argument in further detail. The fighting ground of the case was in the field of fact, and we find nothing in the record which would justify us in interfering with the verdict of the jury.

The judgment below must therefore be *affirmed*.