[No. 13925.   Department One.   March 23, 1917.]

NORA GOERTZ, *as Executrix etc.*, *Appellant*, v. CONTINENTAL
LIFE INSURANCE & INVESTMENT COMPANY,
*Respondent*.[1]

INSURANCE—BREACH OF WARRANTY — HEALTH OF INSURED — EVI-
DENCE—QUESTION FOR JURY.   Whether representations and warranties
that the insured was in good health were in fact false and made
with intent to deceive is a question for the jury and not for the
court, where by the testimony of one doctor, he was examined and
found in good health, in December, 1913, and in July, 1914; and by
the testimony of another doctor, he was suffering from pulmonary
tuberculosis which progressed rapidly, from April, 1914, until July,
1914; and by the testimony of another doctor who was the company's
examiner, he was examined in September, 1914, and found to be in
perfect condition, but that five or six months later he had pulmonary
tuberculosis, from which he died May 12, 1915.

SAME—BREACH OF WARRANTY—HEALTH — EVIDENCE — NONEXPERT
EVIDENCE—ADMISSIBILITY.   Upon an issue as to whether representa-
tions and warranties that the insured was in good health were in
fact false and made with intent to deceive, while he was suffering
from tuberculosis from which he afterwards died, it is competent for
the plaintiff to prove his physical appearance at the time in question
by acquaintances and associates who had adequate opportunity for
observation; especially where the usual period of the duration of the
disease elapsed between the date of the policy and the date of his
death.

Appeal from a judgment of the superior court for Pierce
county, Clifford, J., entered July 8, 1916, upon granting a
nonsuit, dismissing an action upon a life insurance policy,
after a trial before the court and a jury.   Reversed.

*H. E. Foster*, for appellant.

*Karr & Gregory*, for respondent.

WEBSTER, J.—This action was instituted to recover upon
a policy of insurance issued by the defendant on the life of
one Fred D. Harris, now deceased, and payable to his es-
tate.   The complaint is the usual one in such actions.   For

[1]Reported in 163 Pac. 938.

answer, the defendant admitted the material allegations of
the complaint, and, by way of an affirmative defense, alleged
that Harris had procured the policy by means of false and
fraudulent representations and warranties: That, at the
time of his medical examination, Harris was asked by the
medical examiner of the defendant the following questions,
and made the following answers:

"Q. What diseases have you had?  A. None.  Q. When
did you last consult a physician?  A. Never consulted a
physician.  Q. What is your condition of health?  A. Good.
Q. Has change of climate or occupation ever been advised
account of poor health?  A. No;"

that, in truth and in fact, at the date of said examination,
Harris was suffering from pulmonary tuberculosis and knew
his condition at that time; that, prior thereto, he had treated
with physicians for pulmonary tuberculosis and syphilis,
and had been advised by a physician to change climate on
account of poor health; that these representations were
made by him for the purpose of deceiving, and they in fact
did deceive, the defendant; that on May 12, 1915, Harris
died of pulmonary tuberculosis, at Needles, California.
These allegations were denied by the reply, and upon the
issue thus joined, the cause was tried to the court sitting
with a jury.  At the conclusion of all the testimony, the de-
fendant challenged the sufficiency of the evidence to support
a verdict and judgment in favor of the plaintiff, and moved
the court to discharge the jury and enter judgment for the
defendant.  This motion was granted, and the plaintiff ap-
peals.

The first question for consideration is whether the court
erred in withdrawing the case from the consideration of the
jury and rendering judgment in favor of defendant.  The
salient facts, briefly, are these:  Fred D. Harris was a ne-
gro, born in Knoxville, Tennessee, on January 11, 1881.
For some time prior to his death, he resided in Tacoma,
Washington, and engaged in conducting a cigar store and

pool room in that city. On September 17, 1914, he made
application to the defendant for the policy of insurance upon
which this action is based. On the following day, he pre-
sented himself to Dr. L. J. Hunt of Tacoma, the defend-
ant's medical examiner in that city, for the usual and cus-
tomary physical examination. Dr. Hunt testified that, dur-
ing this examination and as a part thereof, Harris was
asked the questions, and made the answers thereto, set forth
in the defendant's affirmative defense. As a result of the
examination, Dr. Hunt prepared and signed his report as
medical examiner, in which he stated, among other things,
that Harris was five feet five and one-half inches in height,
weighed 158 pounds; that his chest measurement was thirty-
three inches, and his abdomen measurement was thirty and
one-half inches; that the examination disclosed no evidence
of past or present disease of the lungs, throat, heart, stom-
ach, kidneys, brain, or nervous system, and that there was
no evidence of past or present syphilis; that his pulse was
regular, strong, and clear, and that he appeared to be
healthy. In answer to the printed question: "Do you rate
applicant first class, good, or bad risk?" Dr. Hunt an-
swered: "First class." At the trial, Dr. Hunt testified in
substantial conformity with his medical report. The de-
fendant then called as a witness in its behalf Dr. A. S. Mon-
zingo, who testified that he was a practicing physician re-
siding in the city of Tacoma, and that he first met Fred D.
Harris in April, 1914, at which time Harris came to him
for professional treatment; that Harris complained of feel-
ing bad; said that he did not know what was the matter with
him; that he had a cough and was suffering from pains in
the chest and was having night sweats. The witness pre-
scribed for Harris and ordered him to report at frequent in-
tervals for further examination; that thereafter Harris
called on him at least six times, the last call being in July,
1914, which was the last time witness saw Harris. Dr.
Monzingo testified that, on the occasion of this last call,

Harris was running a temperature of 101 degrees and his pulse rate was between 115 and 120; that he had lost flesh, continued to complain of a cough, pains in the chest, and of having night sweats, and that he manifested other symptoms of pulmonary tuberculosis. Harris was then informed that he was suffering from that disease and was advised by Dr. Monzingo to go south to a warm, dry climate.

Dr. Hunt testified that, about five or six months after he had examined Harris in September, 1914, Harris came to him for treatment and told him that, about two years prior to that time, he had been told by Dr. A. S. Monzingo that he should take treatment for syphilis; that he did not do so at that time, but wanted Dr. Hunt to then treat him for that disease. Dr. Hunt examined Harris and diagnosed his disease as being pulmonary tuberculosis instead of syphilis, and advised him to go to California. On the 12th day of May, 1915, Harris died of tuberculosis in that state. It will be remembered that Dr. Monzingo testified that he first met Harris in April, 1914, and at that time Harris was suffering, not from syphilis, but from tuberculosis. Dr. Hunt testified that, among members of the negro race, pulmonary tuberculosis usually will result fatally in from eight months to one year from the time the disease is contracted.

At the conclusion of defendant's evidence, plaintiff called as a witness Dr. J. E. Henry, a practicing physician residing in the city of Tacoma, who testified that he knew Harris, and that the records of the West Coast Life Insurance Company, of which he was the medical examiner, showed that Harris had been examined by the witness for life insurance in that company in December, 1913, and in July, 1914; that, on both occasions, Harris was passed as an insurable risk; that he did not distinctly remember Harris, for the reason that he had examined many colored people about those times, but that Harris' lungs, at the time of these examinations, must have been in such condition that the witness did not discover any evidence of tuberculosis,

and that his pulse must not have been so high as to create any suspicion of his physical condition, else he would not have accepted him as a good insurance risk. It will be recalled that Dr. Monzingo testified that it was in the month of July, 1914, that he diagnosed Harris' disease as tuberculosis and advised him to seek a warm, dry climate.

To summarize in chronological order the facts to which the witnesses testified: In December, 1913, according to the testimony of Dr. Henry, Harris was examined for insurance and accepted as a good risk. Dr. Monzingo testified that, in April, 1914, Harris first came to him, manifesting at that time symptoms of tuberculosis; that in July, 1914, the disease had progressed to the point where Harris was running a temperature of 101 degrees, with a pulse rate of 115 to 120; that he had lost flesh, was complaining of a cough, pains in the chest, and of having night sweats; was told by Dr. Monzingo that he was suffering from tuberculosis, and was advised to change climate. During the same months, Harris was again examined for insurance by Dr. Henry, and was accepted as an insurable risk. On September 18, 1914, Harris was examined by Dr. Hunt, who found no evidence of past or present disease of any kind; that Harris' pulse was 90; the action of his heart was regular, strong, and clear; that he appeared to be healthy, and was classified as a first-class risk. Five or six months later, Harris consulted Dr. Hunt, believing, according to Dr. Hunt's testimony, that he was afflicted with syphilis, and desiring to be treated therefor; but, upon examination, it was found that he was suffering, not from syphilis, but from pulmonary tuberculosis. Very soon thereafter Harris went to Needles, California, and on May 12, 1915, died of tuberculosis.

In view of this most remarkable testimony, the case clearly was one of fact for the consideration of the jury, and not one of law for the court. In sustaining the defendant's challenge to the sufficiency of the evidence and rendering

judgment in its favor, the trial court, of necessity, must
have passed upon the credibility and accuracy of the testi-
mony of Dr. Monzingo, for upon no other assumption than
that of the truth of his testimony could such a disposition
of the cause have been made. In assuming, under the pe-
culiar facts of this case, to pass upon that question, the
learned trial court violated one of the cardinal rules of jury
trials, viz., that, where there is a substantial conflict in the
testimony, it is the peculiar function and province of the
jury to determine what weight and credit shall be given to
the testimony of the various witnesses. The case should
have been submitted to the jury under proper instructions
upon the questions of whether the representations and war-
ranties complained of were in fact false when made, were
known by the insured to be such at the time, and were made
with the intent to deceive. *Brigham v. Mutual Life Ins. Co.,*
*ante* p. 196, 163 Pac. 380.

Appellant further assigns as error the rulings of the court
in rejecting and refusing to admit certain evidence offered
in her behalf, and as this question will, no doubt, recur upon
the retrial of the cause, we deem it proper to dispose of it
at this time. Plaintiff called as a witness one V. A. Becht,
who testified that he was in the business of soliciting in-
surance and collecting premiums thereon for the West Coast
Life Insurance Company, and was well acquainted with Har-
ris, having known him for more than a year prior to his
death; that he went to Harris' place of business once a month
from December, 1913, to December, 1914, and on each of
these visits saw Harris and talked with him; that, as a part
of his duty, he was required to note and observe the physical
appearance of policy holders as to whether they were ap-
parently healthy or unhealthy. He was then asked this
question: "I wish you would describe to the jury what his
[Harris'] physical appearance was; that is, of this decedent
when you first got acquainted with him a year prior to his

death;" to which the court sustained an objection. He was then asked: "State to the jury whether or not you had the means of observing this man sufficiently to ascertain what his apparent condition of health was as to whether it was good or bad;" to which also an objection was sustained. Whereupon counsel for appellant made the following offer:

"I would like the record to show that I expect this witness to testify that he he saw the decedent once a month for one year prior to his death, and that at all times he was apparently in the best of health and was engaged in business in the city of Tacoma, and there was nothing from any observation he made to indicate to him that he was in any respect suffering from any ailment."

This offer was refused by the court. Plaintiff subsequently called one G. E. Brown, who testified that he was well acquainted with Harris and had known him from 1906 or 1907 until the time of his death; that, from the latter part of 1913 until the spring of 1915, when Harris left for California, the witness saw him every ten days; that witness was a Pullman porter and was in the city of Tacoma two nights and one day every ten days during that time. While in Tacoma he stayed at the same hotel at which Harris boarded, and spent a great deal of his time at the cigar store and pool room conducted by Harris. He was then asked: "You may state whether or not you had the means of seeing and observing his [Harris'] general condition of health during the year 1913 and 1914;" to which an objection was sustained. The rulings of the trial court upon the proffered testimony, both of the witness Becht and of the witness Brown, were erroneous. The evidence was competent and should have been admitted. 17 Cyc. 86 *et seq.*, and cases cited; Jones, Evidence, § 360, and cases cited; Abbott, Mode of Proving Facts (2d ed.), p. 408; 1 Wigmore, Evidence, § 568; Wharton, Evidence (3d ed.), § 512; 1 Greenleaf, Evidence (16th ed.), §§ 430h and 430j; *Peterson v. Seattle Traction Co.*, 23 Wash. 615, 63 Pac. 539, 65 Pac.

543, 53 L. R. A. 586; *Reininghaus v. Merchants' Life Ass'n,* 116 Iowa 364, 89 N. W. 1113.

It was clearly competent, in the circumstances disclosed by the evidence in this case, for the plaintiff to prove by the acquaintances and associates of Harris, who had had an adequate opportunity for observation, that, during the time in question, Harris appeared to be in good health and there had been no marked change in his physical appearance; and particularly to prove, if she were able to do so, that there had been no marked change in his physical appearance between the time he was examined by Dr. Monzingo in July, 1914, and the time of his examination by Dr. Hunt in September of the same year. Such testimony would have had a direct and important bearing upon the weight and credit to be given to the testimony of Dr. Monzingo. It was also competent for the plaintiff to show, by those who had been in a position to observe and to know, whether there had been any marked change in the physical appearance of the insured subsequent to the issuance of the policy, as bearing upon the question of whether Harris was suffering from tuberculosis at the time of the issuance of the policy, and if so, whether he knew of his condition at that time. Especially is this so in view of the testimony of Dr. Hunt to the effect that the duration of pulmonary tuberculosis in cases of members of the negro race is from eight months to one year, since a period of eight months lacking six days elapsed between the date of Harris' examination for the insurance and the date of his death.

We conclude that the judgment must be reversed, and the cause remanded for further proceedings consistent with this opinion.

ELLIS, C. J., MORRIS, MAIN, and CHADWICK, JJ., concur.