JOHN H. CLAUSSEN, Appellee, v. PETER CLAUSSEN, Appellant.

No. 41701.

JUNE 20, 1933.

Bennett Cullison, for appellant.

Ernest M. Miller, for appellee.

KINDIG, C. J.—The plaintiff-appellee, John H. Claussen, is a nephew of the defendant-appellant, Peter Claussen. On August 6, 1930, the appellee filed a petition alleging that the appellant is a person of unsound mind, and therefore unable to manage his business and take care of his property. Because of the appellant's mental condition, the appellee prayed for the appointment of a guardian to take charge of and manage the appellant's property.

As said in the preliminary statement, the cause was tried to a jury. A verdict was rendered by the jury declaring the appellant to be mentally incompetent, and therefore unable to manage his property and business affairs in a rational manner. Acting upon that verdict, the district court entered judgment accordingly, and appointed a guardian for the property of the appellant.

There is but one proposition presented for our consideration. It is said by the appellant that the district court erred in not directing a verdict in his favor because of the insufficiency of the evidence to sustain mental incompetency.

Section 12614 of the 1931 Code provides:

"When a petition, verified by affidavit, is presented to the district court that any inhabitant of the county is: 1. * * * [a] person of unsound mind; * * * and the allegations of the petition are satisfactorily proved upon the trial, the court may appoint a guardian of the property of such person."

Following that section is section 12621 of the same Code, which declares:

" * * * An issue arising on the prayer for the appointment of a permanent guardian shall be tried by the court unless a jury be demanded by either party."

The question, then, is under the above-named statutes, whether the allegations of the appellee's petition were satisfactorily proved upon the trial. This court has determined what is meant by mental incompetency under the above-named statutes. Under all circumstances, the criterion is the power and "ability of the owner to manage his property and business affairs in a rational manner." Perry v. Roberts, 206 Iowa 303 (local citation 308), 220 N. W. 85, 87; Zander v. Cahow, 200 Iowa 1258 (local citation 1264), 206 N. W. 90. To the same effect see Muller v. DeVries, 193 Iowa 1337 (local citation 1341), 188 N. W. 885.

A guardian may not be appointed merely because the owner of the property has impairment of memory or other debility. Such mental incompetency, in order to justify the appointment of a guardian, must be such as to deprive the owner of the ability to manage his estate in a rational manner. Graham v. Clapp, 191 Iowa 1224 (local citation 1225), 184 N. W. 329. Although the appellant's mind may be to some extent impaired by age or disease, yet on that basis alone a guardian will not be appointed for his property. Regardless of the age and disease, the appellant may nevertheless possess the necessary mental powers to manage his property and business affairs in a rational manner. Therefore, as previously explained, a guardian will be appointed for appellant's property only when he has lost his reasoning powers to the extent that he cannot manage his property and business affairs in a rational manner. Perry v. Roberts (206 Iowa 303, 220 N. W. 85), supra; Zander v. Cahow (200 Iowa 1258, 206 N. W. 90), supra. To the same effect see Wiechers v. Pool, 172 Iowa 422 (local citation 428), 153 N. W. 65.

Within the rule above announced, then, is the appellant's mind so impaired that he cannot manage his property and business affairs in a rational manner? If there is evidence to sustain the appellee's allegation that the appellant is thus mentally unsound, the judgment below must be affirmed because the jury returned a verdict to that effect. After carefully reviewing the record, it is found

that there is substantial evidence to sustain the jury's verdict under the rule of law applicable.

The appellant, at the time of the trial, was sixty-nine years of age. In 1881 he came from Germany to America. Following his arrival in America, the appellant first lived in Clarke, and then in Pottawattamie, county. During the year 1884, thereafter, he located in Shelby county. It appears that he commenced farming on land of his own in 1901. He lived on this farm until the year 1917, when the appellant moved from the farm to the town of Shelby. When leaving the farm, the appellant rented it to a tenant. While living in Shelby, the appellant resided with his sister Kate. She was a spinster and he a bachelor. The appellant lived with his sister in Shelby for a period of two years; whereupon the appellant purchased another farm and moved on it in the spring of 1920. Apparently the appellant lived on this farm until the year 1929, when he removed to the first farm above mentioned.

At the time the appellant first farmed, he was an efficient and capable farmer. His stock was excellently cared for, and the house, although kept by the appellant as a bachelor, at all times appeared neat and clean. After 1927, however, the appellant changed. He seemed like a different man. In these later years his house was dirty, filthy, and ill-kept. Several windows fell out of the house and boards were nailed over the openings. A large hole was burned in the floor near the stove where apparently hot coals fell from the stove. Obnoxious and high weeds were permitted to grow in the yard around the house and buildings. According to the record, the animals were only partly cared for. They became hungry and one animal, at least, starved to death. Other animals were at least gaunt, ill-kept, and on the verge of starvation. The male animals were not castrated, and all of them were permitted to run at large.

When the time arrived to gather corn, the appellant failed to husk his. As an excuse, the appellant suggested that he could not employ help. A young man offered his services, and the appellant said that there was plenty of time in which to gather the corn. That he said even though the season was already late. At times, the appellant went into the field with a sack, instead of a wagon, and gathered a bushel or two of corn at a time. On other occasions he seems to have husked a little corn, but threw it on the ground in piles. There was a mortgage on the appellant's farm which became due. Consequently the mortgagee foreclosed the same. Accordingly

the land was sold under special execution, and the year of redemption provided by statute commenced to run, but the appellant ignored it. His friends and relatives suggested that he should redeem before the period of redemption had fully run, but the appellant on each occasion stated that it was not necessary because he had a deed to the land and thought that the service of the original notice was not sufficient. As a result, he lost the farm.

Because of the facts above recited, including the marked change from the appellant's former, to his later, mental powers, and other facts and circumstances appearing in the record, it is apparent that the jury had before it sufficient evidence to support its verdict. The jury was justified, under the evidence, in finding that the appellant's mind was so unsound that he could not manage his property and business affairs in a rational manner. Without a guardian, the appellant's property would be wasted and lost. The district court, therefore, did not err in entering judgment upon the jury's verdict, or in appointing a guardian for the appellant.

Consequently, the judgment of the district court must be, and hereby is, affirmed.—Affirmed.

STEVENS, MITCHELL, ANDERSON, and KINTZINGER, JJ., concur.