IRVINE MILLER et al., Appellees, v. W. W. MILLER, Appellant.

No. 46873.

July 29, 1946.

Rehearing Denied September 23, 1946.

Ray C. Fountain and Herrick, Sloan & Langdon, all of Des Moines, for appellant.

Volney Diltz, of Des Moines, for appellees.

OLIVER, J.—This action was instituted in December 1945, for the appointment of a guardian of the property of W. W. Miller under section 670.2, Code of Iowa, 1946 (section 12614, Code of 1939). Plaintiffs are children of defendant. Another son, Clarence, was a witness for plaintiffs, and a daughter, Mary Berney, assisted defendant. The amended petition alleged that during the past year and one .half defendant had become a person of such unsoundness of mind as to be incompetent to manage his business affairs.

A jury was waived and the cause was tried to the court on the issue of the appointment of a permanent guardian. From the judgment appointing such guardian defendant has appealed.

Until 1943 appellant engaged in farming near Cummings in Warren county. He was industrious, careful, and successful. His wife died some years ago. Since 1943 he has lived most of the time at the home of his daughter, Mary Berney, who is in the real-estate business in Des Moines. At the time of .the trial he was seventy-eight years old and his vision and hearing had become impaired.

His property then consisted of his one-hundred-sixty-acre-farm in Warren county, a house in West Des Moines which rented for $30 per month, a California chicken ranch, a Ford truck, five war savings bonds, each worth $750 plus interest, rent notes, notes of several of his children, and a small balance in a checking account.

Appellant's physician, Dr. Sternagel, testified he first observed a change in appellant's mental condition about four years previously when appellant appeared unable to grasp the idea why he should wear a truss or how it should be worn. Later he noticed appellant's mental deterioration as evidenced by "the forgetfulness that he had paid his bills at the office, the inability to remember when he had an appointment, and the failure to call for prescriptions that were left for him at

the drugstore." The doctor testified he made further observations and arrived at certain professional opinions. He advised appellant "he should have someone to help him with his financial affairs, and particularly when traveling a long ways from home." He testified that was his professional opinion and conclusion. The doctor testified he had an opinion as to whether or not appellant was suffering from cerebral arteriosclerosis. He did not state that opinion in so many words. He testified the existence of that ailment would affect an elderly person's competency to conduct business generally and that it would have a bearing upon appellant's ability to drive an automobile only as it affects the reasoning, hearing, sight, and judgment.

Dr. Henry, who examined appellant, testified he had definite degenerative changes in his nervous system and that although people of his age have senile changes they do not have the degree of changes appellant has; he has pathological changes in his nervous system.

"Summary: This man, seventy-eight, is showing senile changes both physically and mentally. His nervous system shows degenerative changes. It would appear that the nervous changes were aggravated by an anemia, possibly a pernicious anemia. It appears he is reaching a state of moderate decline in his mental capacity. These changes are shown by his rather childish resignation, tendency to become detached and forgetful. His memory for many events is good, but his dependability to be alert to situations is questionable. The diagnosis is, anemia, possibly pernicious in type, senile deterioration."

The doctor testified senile deterioration lessens the competency of an individual and that appellant's trustfulness and childish manner indicated senile deterioration in which he had a tendency to efface himself and follow the direction of others, rather trusting implicitly without asserting himself.

The testimony of appellees and their lay witnesses referred largely to appellant's loss of memory, judgment, and responsibility. Some occurrences shown of record are the following:

Appellant was in California during the winter of 1944–1945. He instructed his son-in-law Collins to sell his corn.

Collins did so and sent appellant the buyer's check for $1,200. A month later appellant wrote Collins to sell the corn. An investigation disclosed appellant had cashed the check. Considerable correspondence followed before appellant became satisfied he had received the check.

He bought a California chicken ranch, on a lot fifty-five feet wide, for about $3,500. His brother, who lived near by, had told him the seller had been offering it for $1,250 and warned him not to "get stuck." Appellant says the price he paid included certain equipment and chickens not included in the $1,250 price. After buying more chickens and making certain repairs and improvements he disposed of his flock and rented the buildings.

In the summer of 1945 appellant, after carrying for months two checks amounting to several hundred dollars, threw them into a wastebasket, from which they were afterward retrieved by Mary Berney.

Appellant sold and was paid for an article of furniture. A day or two later he attempted to sell the same article to the same person.

Appellant held a recorded $150 note of appellee Mabel Laughlin and her husband. He tried to collect the interest before it was due. Later he requested and was given a new note and he returned the old note. Then he tore up the new note, saying he had it recorded, which was incorrect. Still later he asked for the note and was reminded he had surrendered the old note and destroyed the new note.

Appellant deposited a check for $1,000 with Judge Linville with a bid on a farm which was to be sold under court order. He does not remember giving this check or whether it was returned to him.

Appellant imagines his son-in-law Collins stole his will from him at a bank. The record shows the will is and has been held by the attorney who prepared it for appellant and never has been in the possession of any other person.

During the past few years he has had substantial receipts from rentals and from sales of property. However, in 1945 several of his checks were returned on account of insufficient

funds. On one such occasion he cashed a $750 war savings bond to replenish his account, saying to his daughter Mrs. Laughlin, "don't tell Mary."

In 1945 appellant had a series of automobile and truck accidents. His driver's license, which was later revoked, permitted daytime driving only but he drove at all hours. He had let his automobile insurance lapse but Mary Berney discovered the lapsation card in his pocket and sent a check to revive it. His last accident was about October 28th, when he started to drive from Des Moines to Cedar Rapids. He testified:

"I was driving in the nighttime I couldn't get anybody to go with me, I wanted to go pheasant hunting so I just started out."

He arrived at the home of his son Clarence in Cedar Rapids with blood on his face and clothing and refused to tell what had happened, "because you will tell Mary." Later he said he had hit a truck, near Marshalltown, and wrecked his car. The next day he returned to Des Moines by bus. He gave the ticket agent a bill and the agent pushed out his ticket, some currency and silver. Appellant picked up the silver but refused to take the paper money, insisting, "* * * it ain't mine." The ticket man said, "It is yours. You better watch yourself old man somebody is going to take you."

About December 1, 1945, appellant bought another used car without testing it. Apparently it was defective. Later it was returned to the seller. Appellant also owned and drove a Ford truck, which at the time of the trial was under repair necessitated by an accident.

In July 1945, a group meeting of six of the seven children (the absent one lives in California) and appellant was held at the home of Mary Berney for the purpose of making some provision to handle appellant's affairs. They discussed a guardianship. Appellant admitted he needed someone to help with his business but wanted to continue to handle his business and money as he desired. Other such meetings were held later at the home of appellee Collins. Mary Berney was invited but did not attend. She testified she thought it her duty to

attend the first meeting because she felt something should be done in assisting her father in handling his money and doing his business, and that she still felt her father needed help in conducting his business, but that since the first meeting she had learned her father was nearly blind and she attributed his need of assistance to that rather than to mental deterioration. She admitted she never communicated that knowledge and opinion to the others. She testified she had assisted appellant in taking care of his business and during the last year had given him advice on business matters.

Appellant was called as a witness and examined at length. The trial court found that it was necessary on an unusual number of occasions to have questions repeated to him. His memory appeared to be good as to some matters but he was uncertain as to various more recent matters, such as the amount of the current rental income from his farm and whether he had been paid his share of the oats. After some time it was discovered he was testifying in part from papers which he and his daughter Mary had prepared to help him as a witness.

Appellant testified he understood that if a guardian is appointed he can be picked up at any time thereafter and sent to an insane asylum without any further action and that was his principal objection to the appointment of a guardian.

During the progress of the trial, on December 27, 1945, appellant conveyed all his real and personal property in trust to Norwalk-Cummings State Bank as trustee. The trust agreement provides that the trustee shall handle and dispose of the property and pay appellant $100 per month and the person furnishing him room and board $40 per month, and that upon appellant's death the remaining trust estate shall be divided among his seven children, after deductions for certain promissory notes therein listed; that the share of any beneficiary who shall challenge it or the capacity of the trustor to make it shall be forfeited; and that the trustee shall receive a reasonable compensation to be agreed upon or fixed by the court.

Appellant testified he fully understands everything in the trust agreement; that one of the reasons he made it was that he wanted to get rid of a will he had made; that although

the agreement recites that the trust is irrevocable he can make a will disposing of the property conveyed to the trustee, and expects to do so, and that if he had not so understood it he would not have executed the trust agreement. The trustee "is to be paid $40 altogether, that is the way I understood it * * * maybe it is $40 a year I ain't sure about that."

The findings of the trial court state that it appears without question from appellant's testimony that he does not understand certain provisions of the trust agreement, even though, after its execution, his son Clarence attempted to go over it with him and explain it to him.

Appellant testified Mary Berney was present when he told his attorney (who had been Mary's attorney for many years) what he wanted in the trust agreement: "Mary and I talked it over and we thought that was the way to do it."

Upon appellant's family cemetery lot is a sizable, modern monument recently erected by appellant, upon which are carved the names of his deceased wife and daughter and his own name. The trust agreement contains a clause requiring the erection of a monument at trustor's grave by the trustee. Appellant testified:

"In my trust agreement I want another monument put up, I have not yet told the trustee about the kind I wanted or where I wanted it put. I ain't. satisfied with that monument."

Mary Berney testified she thinks the trusteeship would be a good thing for appellant and a guardianship would not be because it would place a stigma upon him. Appellant gave as his reason for the trust agreement:

"I have always taken care of my own business but now I don't want the responsibility simply because I am getting old and I don't want it."

Mary Berney, several other lay witnesses, and Dr. Price, a mental expert, testified to appellant's competency.

The trial court found appellant:

"* * * is not competent to carry on the usual business affairs in a rational manner.

986

"The court recognizes there is evidence in this record showing that in some matters the defendant has carried out his business in a proper manner, but that generally, senile deterioration has advanced to such a state as to render him incompetent to carry out ordinary business affairs."

I. Appellant contends the evidence is insufficient to support the finding that he is a person of unsound mind, within the meaning of section 670.2, Code, 1946 (section 12614, Code, 1939). The meaning of the phrase "a person of unsound mind," as used in the statute is well settled. A mere impairment of memory or other debility of a person will not warrant the appointment of a guardian of his property. There must be such mental unsoundness as to deprive him of the ability to manage his estate in a rational manner. The accepted test of mental unsoundness is the ability and competency of a person to manage his property and business affairs in a rational manner. Emerick v. Emerick, 83 Iowa 411, 49 N. W. 1017, 13 L. R. A. 757; Claussen v. Claussen, 216 Iowa 269, 249 N. W. 397; Richardson v. Richardson, 217 Iowa 127, 250 N. W. 897; In re Guardianship of Hawk, 227 Iowa 232, 288 N. W. 114.

Where, as here, such a case is tried to the court, the finding of the court has the effect of a jury verdict and will not be disturbed if supported by substantial evidence. However, in considering the sufficiency of the evidence to support a finding against the defendant the record is scrutinized closely so that the person will not be unjustly deprived of the control of his property. Huffman v. Beamer, 198 Iowa 1113, 1117, 197 N. W. 476; Richardson v. Richardson, supra.

The record in this case is somewhat lengthy and many details have been omitted from our statement. Each case must be determined on its own facts and decisions based upon other facts do not afford much assistance. In Richardson v. Richardson, supra, Huffman v. Beamer, supra, and other decisions cited by appellant, there was no proof of unsoundness of mind comparable to that in the case at bar. A careful consideration of the entire record in this case satisfies us the evidence was sufficient to support the findings and judgment of the trial court.

II. Appellant predicates error upon certain rulings involving the testimony of his physician, Dr. Sternagel:

"Q. During the last year * * * did you advise him * * * with reference to what you thought he ought to do about his business affairs? A. Yes, sir. Q. * * * you did make further observations and arrived at certain professional opinions? A. Yes, sir. Q. What were they? * * * Q. Just tell us what you told Mr. Miller? A. I told Mr. Miller at his next visit in the office that * * * he should have someone to help him with his financial affairs, and particularly when traveling a long ways from home. Q. * * * that was the result of professional opinion and conclusion you had arrived at from observing Mr. Miller * * *? A. That was the result of the events I have already enumerated, the forgetfulness particularly. Q. But it was your professional opinion? A. Yes, sir."

Objections to the question what the doctor told appellant and motion to strike the answer were overruled. One ground of objection was that the doctor's advice to appellant was immaterial. Although what the doctor said to his patient may have been immaterial, his professional opinion as to the condition of his patient was material. The doctor testified what he told appellant was his professional opinion and conclusion. While the form of this examination was irregular, we do not think prejudice resulted therefrom.

Another ground of objection was that there was no proper foundation laid for the opinion of the doctor. Appellant contends the doctor testified as a nonexpert. We disagree. A regular practicing physician is usually regarded as qualified to give an expert opinion of the mental condition of a patient under his care. Monahan v. Roderick, 183 Iowa 1, 13, 166 N. W. 725.

Moreover, the doctor testified his opinion was "the result of the events I have already enumerated." The matters previously detailed in the doctor's testimony tend to show such a departure from normal on the part of appellant that the trial court would have been warranted in permitting even a nonexpert witness to give an opinion. Zander v. Cahow, 200 Iowa 1258, 1260, 206 N. W. 90; Campfield v. Rutt, 211 Iowa

1077, 1080, 235 N. W. 59; Erwin v. Fillenwarth, 160 Iowa 210, 217, 137 N. W. 502.

■ Appellant also contends the doctor's testimony that appellant "should have someone to help him with his financial affairs" was intended to convey to the court an opinion and conclusion that a guardian should be appointed for the appellant and hence is objectionable in that it embraces the whole merits of the case and leaves nothing for the jury (court) to decide. This complaint is not well founded. Our views upon this proposition are set out by Bliss, J., in Grismore v. Consolidated Products Co., 232 Iowa 328, 342-362, 5 N. W. 2d 646, in which many authorities are reviewed and some previous decisions overruled. The rule there recognized is that if the matter to be determined is one in which opinion testimony is proper, such testimony will not be an invasion or usurpation of the province or function of the jury even though it passes upon an ultimate fact which the jury must determine.

■ The decision states the reason why a witness should not be permitted to give his opinion directly that a person is or is not guilty, criminally responsible, negligent, etc., is that such matters are not subjects of opinion evidence but are mixed questions of law and fact, and that when a standard or measure of capacity has been fixed by law, no witness is permitted to express an opinion as to whether or not the person or the conduct in question measures up to the standard.

Among others, the following decisions holding certain opinion evidence admissible, are cited with approval:

Erwin v. Fillenwarth, supra, 160 Iowa 210, 217, 137 N. W. 502, testimony of a layman that his father was capable of looking after financial affairs; Searles v. Northwestern Mut. L. Ins. Co., 148 Iowa 65, 126 N. W. 801, 29 L. R. A., N. S., 405, witnesses testified insured was incapable of transacting business at and before the time he made the policy assignment; State v. McGruder, 125 Iowa 741, 747, 101 N. W. 646, where defense was insanity, opinion evidence was not limited to soundness or unsoundness of mind but lay witnesses testified defendant was not capable of appreciating the difference between right and wrong.

■ III. Clarence Miller testified that at one of the group

meetings he had a conversation with his father about the proposed guardianship in which mention was made of a $250 check which had been returned from California. Counsel for appellees then asked Clarence what his father said about the transaction and he answered: ·

"He said—I said, 'Dad, don't you think you should have somebody to take care of your affairs?' He said, 'Yes.' "

The court overruled appellant's motion to strike the answer as nonresponsive. The ruling was not erroneous. The objection that the answer of a witness is not responsive is not available to the party who is not interrogating. Dice v. Johnson, 198 Iowa 1093, 1097, 199 N. W. 346; Fisher v. Skidmore Land Co., 189 Iowa 833, 837, 179 N. W. 152; Kukkuk v. City of Des-Moines, 193 Iowa 444, 452, 187 N. W. 209.

IV. Over appellant's objection that it was immaterial, Clarence Miller was permitted to testify that when appellant handed the $1,000 check to Judge Linville, the judge said, "Clarence, you should have somebody help take care of your dad, he isn't capable." We think this evidence was inadmissible but hold the ruling was not prejudicial error. The findings of fact of the trial court discuss the check incident at some length but make no mention of the statement of Judge Linville. From this it may be fairly inferred that the trial court gave no consideration to said statement.

V. Irvine Miller testified concerning his contacts and conversations with appellant in the recent past. He was then asked, "basing your answer upon your own observation, your acquaintance with your father, your conversation with him in these group meetings, and everything," to give his "opinion as to whether or not he [appellant] is competent to do his farming, business, and so forth?" and answered, "I say that he should have somebody to look after his business. As I said before, that is my opinion of it." Appellant's objection to the question and complaint upon appeal are founded upon the rule that a nonexpert witness must base his opinion touching mental unsoundness wholly upon facts previously detailed by him in evidence. Neidermyer v. Neidermyer, 237 Iowa

685, 22 N. W. 2d 346; In re Estate of Armstrong, 191 Iowa 1210, 1213, 183 N. W. 386.

The trial court has some discretion as to the permissible form of such questions. Spiers v. Hendershott, 142 Iowa 446, 451, 120 N. W. 1058. See, also, Hertrich v. Hertrich, 114 Iowa 643, 645, 87 N. W. 689, 89 Am. St. Rep. 389. However, we think the question put to this witness affirmatively indicates that the opinion should be based in part upon facts not shown in his testimony and we conclude the objection should have been sustained.

The answer, however, added little to what the record already disclosed concerning the opinion of this witness. He had previously testified that at one of the family group meetings he told appellant he did not think he (appellant) was competent to do his own business and should not be driving, and that appellant (who had first denied and then sought to excuse various actions) did not have much to say from then on. Moreover, the findings of fact make no reference to this testimony or the opinion testimony of other nonexpert witnesses. We are satisfied the ruling does not warrant a reversal.

VI. Frank Miller was asked if he had noticed any difference in his father in the last year or so, and answered, "Well, he has failed terribly in the last year." This was fact testimony as distinguished from opinion testimony. Severin v. Zack, 55 Iowa 28, 30, 7 N. W. 404; Stone v. Moore, 83 Iowa 186, 188, 49 N. W. 76; Manatt v. Scott, 106 Iowa 203, 212, 76 N. W. 717, 68 Am. St. Rep. 293. Hence the trial court properly overruled appellant's objection that no proper foundation for the question had been laid.

The court refused to strike the answer of the witness as a conclusion. Conclusions from composite facts which cannot be aptly described to the jury may be admissible in evidence. Reininghaus v. Merchants Life Assn., 116 Iowa 364, 366, 89 N. W. 1113. Considerable discretion is lodged in the trial court in such matters. We hold the ruling was not error.— Affirmed.

All JUSTICES concur.