Security Savings Bank, Appellee, v. J. H. Howell, Administrator; Mary R. Humphrey, Objector, Appellant.

PRINCIPAL AND AGENT: Evidence of Agency—Husband and
1 Wife. Evidence reviewed, in an action on a note, and held sufficient to support a finding that the deceased maker's husband was authorized to sign her name to the note.

WITNESSES: Competency—President of Plaintiff Bank also Ad-

2  ministrator of Defending Estate. That the administrator of
the estate of the decedent maker of a note, upon which suit
was brought by a bank, was the president of the bank, and a
witness for plaintiff, was a circumstance showing his interest
and affecting his credibility; but where his evidence is not de-
nied, and he is corroborated by other witnesses and other cir-
cumstances in the case, his evidence cannot be rejected.

APPEAL AND ERROR:  Harmless Error—Competency of Witnesses
3  —Evidence Bearing on Fully Established Fact.  Where plaintiff
in an action on a note, against a decedent wife's estate, made
out its case by sufficient evidence of witnesses other than her
husband, it need not be determined whether the husband's tes-
timony was competent, under Sec. 4604, Code, 1897, prohibiting
evidence of transactions with deceased persons.

*Appeal from Wright District Court.*—E. M. McCALL, Judge.

SEPTEMBER 26, 1919.

ACTION at law, in probate, to establish a claim against
the estate of Mary E. McCausland, deceased.  The claim
is on a promissory note, alleged to have been executed by
J. E. McCausland and deceased, in favor of plaintiff.  A
jury was waived, and, after a trial on the merits, the ob-
jector introducing no testimony, the trial court found for
plaintiff, and allowed and established the claim for the full
amount of the note, $4,200 and interest.  The objector,
Mary R. Humphrey, appeals.—*Affirmed.*

*McGrath & Archerd*, for appellant.

*J. W. Henneberry* and *Sylvester Flynn*, for appellee.

PRESTON, J.—1. The claim averred that, on March 8,
1917, J. E. McCausland and Mary E. McCausland made,
executed, and delivered to plaintiff their written promis-
sory note for $4,200, given in payment of
1. PRINCIPAL AND  other notes theretofore executed by said
AGENT: evidence
of agency: hus-  parties in favor of plaintiff.  It appears that
band and wife.
the note in suit was given to take up, and
in renewal of, five other notes held by the bank, all of which
bore the name of Mrs. McCausland.  One of these, for

$1,000, she had personally signed, and her husband had signed her name to the others. It is shown by the evidence that McCausland and deceased discussed with the president of the bank the matter of giving a new note for these five notes, at a lower rate of interest. The administrator is president of the bank. Deceased left no will, and was without issue. Mary R. Humphrey, the objector, is the mother of deceased, and she filed written objections to the allowance of the claim, alleging that the note is not a valid claim against the estate, for the reason that it is not a note given by the deceased, nor anyone for her, by her authority. She asked to be permitted to defend.

J. E. McCausland and deceased were married March 1, 1911. The husband had been married before, and had several children by the prior marriage. At that time, the husband was living four miles southwest of Eagle Grove, on a rented farm. He was engaged extensively in the live stock business. Afterwards, they moved onto a 90-acre farm, consisting of two tracts, south of Eagle Grove. As we understand it, the 80-acre tract was purchased after the marriage, although it is stated that she owned it at the time of the marriage; but this is not very material. At any rate, it was stipulated that, since December 13, 1912, and up to the time of her death, deceased was the owner of 80 acres of the 90-acre farm, and that, since March 1, 1913, the husband and deceased were the owners of the 10 acres referred to in the evidence. The buildings were on the 10-acre tract. This 10-acre tract joins the 80. The 10-acre tract was purchased of one Huston. The contract was made in December, 1912, with the understanding that improvements could be made on the land. McCausland began making extensive improvements soon thereafter; and later, a deed was made. Tiling and other improvements were made on the 80 acres. The improvements were not completed for two or three years. Much of the testimony

introduced was in regard to these improvements, when and
how they were made, by whom the work was done, the
persons from whom material was furnished, payments
therefor, and the general method of making the improve-
ments. The husband of deceased testified in detail in re-
gard to these matters, and as to how the farm was carried
on, and who did the business, the disposal of the proceeds,
and the depositing thereof in the bank. A number of other
witnesses also testified as to these matters, the material-
men, carpenters, painters, bankers, etc. This evidence was
introduced, as we understand it, as bearing upon the course
of business, and as bearing upon the knowledge thereof by
deceased. It is conceded that deceased did not personally
sign her name to the note upon which the claim is found-
ed, and that her name was signed thereto by her husband.

The principal point in the case, and the one to which
the argument is more particularly directed, is as to wheth-
er the evidence introduced by plaintiff, and uncontradicted,
is sufficient to show the authority of the husband to sign
his wife's name to the note in suit, and to sustain the
finding of the trial court. It is conceded by appellant that
a husband may act as the agent of his wife; but they say
that, in order to bind her, he must previously be authorized,
or she must, with express or implied knowledge of his acts,
subsequently ratify them; and that, where the husband
purchased lumber, and erected a house upon land owned by
his wife, who did not authorize the purchase of the lum-
ber, or know that it was bought, on credit, the agency of
the husband cannot be inferred from the marital relation
alone, and that the agency of the husband to contract for
lumber on the part of the wife, will not be assumed from
the marital relation alone, or from the fact that it was
used by the husband in the erection of a house upon the
land of the wife; and, further, that general agency does
not give the right to sign the name of the principal to nego-

tiable paper.   Cases are cited to support these propositions, but they seem not to be controverted by appellee, so that we shall not take the time to discuss them.   Mr. Howell, the president of the bank, testified as to conversations with the deceased in regard to her husband's signing her name to notes.   Appellant argues that this testimony is not enough, with the fact of the marital relation, and is not sufficient to show authority.   They say that the substance of Howell's testimony is as follows, and that it is the only evidence in the case on the question of authority.

"I think I know how Mr. McCausland happened to sign his wife's name.   When they made the $3,000 loan, I told Mr. McCausland he better have his wife come up and sign the note.   It was a pretty good-sized note, and when she came in, she said he attended to that business for her,— 'Why did you send for me?'   I handed her the pen to sign, and she handed it to him.   I told her she had better sign it, because she was already there.   She said he had been signing her name, and attended to her business for her."

It appears that this $3,000 note was given for a short time, and until a loan for a like amount could be made on the 80 acres, in order to go on with the improvements. We think there is more to the testimony of Mr. Howell than appellant states; and there are other circumstances in the case bearing on the question of authority.   We shall state some of these, without too much detail.

We should, perhaps, state some other circumstances first, which have a circumstantial bearing on the question, before going to the facts bearing more directly thereon. The improvements made, stated in a general way, are that a new addition was built to the house.   This was 16x28, and one and a half stories high.   The old house was reconstructed; a new barn was built; the old barn was overhauled; there was a new hoghouse, a new sewer, a double corncrib, a new well and pump, and a grain elevator in the

new crib; the 10-acre tract was fenced and cross-fenced;
all buildings were painted; and the dwelling house was
painted on the interior, as well as on the outside, directions
for which were given by deceased. A Ford car was pur-
chased. On March 1, 1913, 20 acres of the 80 were slough,
and, aside from a small string of tile, with no outlet, the
80 acres had no drainage. On this tract a 12-inch tile, ex-
tending 2,600 feet, and emptying into a 16-inch outlet, was
laid, at a cost of about $1,100; about 500 rods of woven
wire fence was built on the 80. To pay for these improve-
ments, money was borrowed at the plaintiff bank, and
notes given, from time to time. All such money was placed
in Mr. McCausland's account, from which it was checked
out as needed. Interest and taxes were paid out of the ac-
count. In addition to the $3,000 mortgage on the 80 before
referred to, $2,000 was borrowed from Mrs. Humphrey, and
this money was placed in his account, and used toward
paying bills. When deceased wanted any money, she wrote
a check on the account. This was frequent. She had no
account of her own. He used the 80-acre tract from the
time of his marriage until his wife's death, the same as if he
owned it. No rent was paid. Whatever either owned,
seems to have been regarded and used as the property of
both. Whenever anything was sold from the farm, the
money was placed in his account in the plaintiff bank.
When he sold a load of hogs, and the money came from
Chicago, if he did not have enough to take up notes, he
would pay what he could, and give a note for the balance.
The money was put in the bank as fast as he had it, and
he would take up notes and stop interest. In making the
improvements, he bought the material, employed the men,
and paid their bills by giving checks. The painter was at
the McCausland home about four weeks, painting. De-
ceased gave him directions as to the work, the colors pre-
ferred, and how she wanted the rooms finished. He fol-

lowed her directions. Both deceased and her husband were present on these occasions. The bill for painting was $251.

Coming now to some of the circumstances, in addition to those heretofore stated, that bear more directly on the question, it appears that, about a month before the note in suit was given, deceased and her husband went to plaintiff bank and had a conversation with Mr. Howell, the president, in regard to reducing the rate of interest on the five notes held by the bank against them. Three of these notes were for about $1,000 each, and two for $500 each, bearing different dates. As before stated, one of these, a $1,000 note, was signed by deceased personally, and her name was signed to the others by her husband. All these notes bore 8 per cent interest. At this time, they told the president that they ought to have a better rate of interest; and he told them that their notes had gotten to such an amount that they were justified in asking for a reduction, and that, when the time came for renewal, he would make the interest 7 per cent. They did not come in at the time agreed upon. About this time, deceased was taken sick, but this appears not to have been known to Mr. Howell. When they did not come in, as agreed, he notified them again. This second notice was sent about the time she was taken to the hospital. Thereafter, Mr. McCausland called, and took up their notes by giving the $4,200 note in suit, and took up the other notes. They had no notes at the bank at that time, except those taken up by giving the new note, and it was intended to include all their obligations to the bank, together with accrued interest. These were the notes discussed by deceased and her husband and Howell, as before stated. The new note was given to draw 7 per cent interest, as agreed. There may be other circumstances; but we hold that the circumstances shown by the entire record which are undisputed, are sufficient to sustain the finding of the trial court. The action being at law, the

finding of the trial court has the force of a jury verdict. No special mode of conferring authority to make or renew negotiable paper is required. The holdings are that it may be by parol, as well as by writing; and it may be inferred from the course of business, and similar transactions recognized; and agency may be proved circumstantially. It appears to us that the bank and its officers, as reasonable men, were justified in believing that the signature of the name of deceased was authorized, and we think there is evidence of ratification. No question is made as to whether ratification should be pleaded, but appellee cites authorities that this is not required, under the circumstances of this case. Appellee concedes that agency may not be inferred from the mere relationship, unattended by conditions, but contends that proof of close relationship, such as that of husband and wife, etc., is entitled to weight, when taken in connection with other circumstances. 2 C. J. 440, Section 35.

It is suggested that Mr. Howell occupies a novel position, as administrator and defendant, and as president of plaintiff bank, and a witness for plaintiff. This may be so; and he is, no doubt, interested, to a certain extent, as an officer of the bank. No other circumstances are cited as affecting his credibility. His evidence is not denied, and he is corroborated by other witnesses and other circumstances in the case.

2. WITNESSES: competency: president of plaintiff bank also administrator of defending estate.

Error is predicated upon the admission in evidence of the notes to which Mr. McCausland signed his wife's name, and which, with the $1,000 note which was signed by deceased, were taken up by the note in suit, because the evidence was insufficient to show that the husband was authorized to sign them. The discussion already had as to the note in suit sufficiently disposes of this assignment. The vital point in the case is as to the authority for sign-

ing her name to the note in suit. The others were a part of the history of the case.

2. It is assigned as error that the court erred in permitting Mr. McCausland to testify as to personal transactions and communications with his deceased wife, under Section 4604 of the Code; and that he was 3. APPEAL AND ER-ROR: harmless error: competency of witnesses: evidence bearing on fully established fact. not a competent witness, under the statute, to give testimony of any kind, or communication had between the witness and the deceased. The matter is somewhat indefinite; but if it is meant, by the last part of the proposition, that he could not testify as to communications between husband and wife, then we have to say that we do not recall any testimony of that kind. But aside from this, that question is not argued. As to his competency under Section 4604, the only objection made as to the witness, or to his testimony as to personal transactions, was the objection made when the witness was sworn, and is as follows:

"The objector objects to the witness J. E. McCausland testifying in this action, for the reason he was the husband of the deceased, and is not, under the statute, a competent witness to transactions had with her, or in connection with her, and is not a competent witness, under the statute, to give testimony of any kind or character or communication had between the witness and the deceased."

He was a competent witness, and his testimony was competent, as to matters which did not call for personal transactions or communications; and nowhere in the record is there any other objection to the witness or to his testimony, which is alleged to have related to such transactions. It is doubtful whether the objection is sufficient. *Erwin v. Fillenwarth,* 160 Iowa 210; *Davis v. Hall,* 128 Iowa 647. But whether the objection was sufficient and whether the witness was competent, we do not de-

termine. His testimony was more particularly with reference to the improvements than as to the execution of the note. Much, if not substantially all, was given in regard to matters occurring when his wife was not present; but it may be that some of his testimony was on the course of business, from which an inference might be drawn that he was authorized by her to sign the note in question. But aside from all this, we think plaintiff made out its case by witnesses other than the husband: that is, that there was sufficient evidence from other witnesses, whose evidence is undisputed, to show that the husband was authorized to sign her name.

The case was tried to the court without a jury. One or two other minor points are argued, and some of these which we have discussed are argued in different ways, but we have treated the questions which seem to be controlling. We find no prejudicial error, and the judgment of the district court is—*Affirmed.*

LADD, C. J., EVANS and SALINGER, JJ., concur.